ADINA DE ZAVALA ET AL. v. DAUGHTERS OF THE REPUBLIC OF TEXAS.

Decided November 27, 1909.

### 1.—Private Corporation—Authority to Sue—Pleading.

In suits by private corporations it is not necessary to allege in the petition that the suit is authorized by the board of directors or other governing body of the corporation.

### 2.—Same—Unauthorized Corporate Act—Ratification.

The individuals composing the executive committee of a private corporation by letter severally authorized the chairman of the committee to file a suit in the name of the corporation for the preservation of its rights; subsequently and after the suit was filed the committee met in regular session and ratified the institution of the suit and the form and manner in which it was brought. Held, the subsequent ratification of the institution of the suit by the committee at a regular meeting in proper form, operated to legalize such action from the beginning, and the fact of ratification might be proved without pleading the same.

### 3.—Same—Legality of Directors—Equity—Jurisdicion.

A court of equity will not primarily take jurisdiction to determine the

legality of directors of a corporation, or to remove a director who is in possession of the office. This jurisdiction will be exercised only when the question arises incidentally and collaterally in a suit of which the court has rightful jurisdiction on other grounds. This rule applied in a suit between parties wherein each claimed to be the legal officers of a private corporation, but in which the property rights of the corporation were primarily involved.

**4.—Parliamentary Law—Presiding Officer.**

By calling another to preside over a meeting of the members of a corporation the legal presiding officer does not forfeit or lose his right to return to the chair and resume his authority.

**5.—Same—Public Meeting—Legal Adjournment.**

When a motion to adjourn an assembly or meeting sine die is regularly made, and put by the presiding officer, and carried by a majority vote, and the result declared by the presiding officer, and there is no call for a division or appeal from the ruling of the chair, the meeting is legally terminated.

**6.—Private Corporation—Constitution—Presiding Officer.**

When the constitution of a private corporation provided that in the absence of the president one of the vice-presidents in the order of their number should preside over the meetings of the members, the president upon vacating the chair because of illness had no authority to call a member of the corporation not a vice-president to preside over the meeting, there being several vice-presidents present.

Error from the District Court of Harris County. Tried below before Hon. L. W. Moore, Special Judge.

*Love & Channell, John T. Duncan* and *Don A. Bliss,* for plaintiffs in error.—A private corporation charged with the performance of certain public functions thereby rendering it quasi public in its nature, can only act by its members in annual or special meeting convened or by the authority of its board of directors expressed in an official way at a regular or special meeting of said board, and by the adoption of a resolution by a quorum of said board of directors. Fayette County v. Krause, 31 Texas Civ. App., 569.

A bill in equity for injunction, seeking to restrain those acting and claiming to be officers or directors of a corporation, which has for its real and only purpose the determination of the right and title to such offices, as between several claimants, can not be maintained. Revised Statutes, arts. 4343, 4344, 4348; 5 Pomeroy's Equity, sec. 307; High on Extraordinary Legal Remedies, secs. 619, 652, 653, 654, 664 and 677; Mead v. Stirling, 23 L. R. A., 227; People v. St. Clair, 31 Mich., 456; Sherman v. Clark, 97 Am. Dec., 516; People v. Albany & S. R. Co., 55 Barb. (N. Y.), 344; Latimer v. Eddy, 46 Barb. (N. Y.), 61; Hill v. Pinchton, 1 Carson's Equity Cases (Pa.), 601; Converse v. Dimock, 22 Fed., 573; Carmel Gas Co. v. Small, 150 Ind., 427, 47 N. E., 11; Sup. Lodge v. Simering, 41 L. R. A., 720; Hughes v. Parker, 20 New Hampshire, 58; Johnston v. Jones, 23 New Jersey Equity, 216; Jenkins v. Baxter, 160 Pa. St., 199, 28 Atl., 682; People v. Conklin, 5 Hun (N. Y.), 452; Griffin v. St. Louis Lime Works Assn., 4 Mo. App., 596; Hart v. Harvey, 22 Barb. (N. Y.), 155; State v. Manlove, 33 Texas, 799; McAllen v. Rhodes, 65 Texas, 353.

*Webb & Goeth* and *Lane, Wolters & Storey,* for defendants in error.

REESE, ASSOCIATE JUSTICE.—This is a suit by the Daughters of the Republic of Texas, a private corporation having that corporate name, against Miss Adina de Zalala and twelve other persons named in the petition as defendants. The purpose of the suit can best be shown by a brief statement from the petition, as follows:

Plaintiff is a private corporation created and organized under the general laws of the State of Texas under that name. The objects and powers of the association, as set out in the charter, are:

"First, to perpetuate the memory and spirit of the men and women who have achieved and maintained the Independence of Texas. Second, to encourage historical research into the earliest records of Texas, especially those relating to the revolution of 1835, and the events which followed; to foster the preservation of documents and relics, and to encourage the publication of records of individual service of soldiers and patriots of the Republic. Third, to promote the celebration of March 2 (Independence Day), and April 21 (San Jacinto Day); to secure and hallow historic spots by erecting monuments thereon, and to cherish and preserve unity of Texas, as achieved and established by the fathers and mothers of the Texas Revolution.

"This association may have and hold, by purchase, grant, gift or otherwise, real estate on which battles for the Independence of Texas were fought; such monument or monuments as may be erected thereon, and burial grounds where the dead who fought and died for Texas Independence are buried; and personal property, consisting of books, manuscripts and other historical records, relating to the early history of Texas, and relics."

It was provided by the constitution of the association that the general management of its affairs during recess should be vested in an executive committee of nine members. The executive committee at the date of the institution of this suit was composed of Mrs. Marie B. Urwitz, as chairman, and eight others named in the petition.

Plaintiff owns many valuable relics relating to the early history of Texas, gathered from the battlefield of San Jacinto and elsewhere; it owns papers and documents relating to the revolutionary period of Texas history; these relics and papers are valuable by reason of their historical interest; they are worth to plaintiffs thousands of dollars; they can not be valued by any rule of commerce; their destruction or loss would be irreparable only to this plaintiff, which could not be adequately compensated by any recovery of damages in money.

By the Act of the Legislature of Texas, approved January 26, 1905, known as chapter 7 of the Laws of Texas of the Acts of 1905, providing for the purchase, care and preservation of the "Alamo property," described in said Act, it was provided that upon the receipt of the title to said land the Governor shall deliver the property thus acquired, together with the "Alamo Church" property, al-

ready owned by the State, to the custody and care of plaintiff, to be maintained by it in good order and repair, without charge to the State; by the terms of section 3 of said Act the duty of keeping, managing, controlling and retaining the custody of all of said property is imposed upon the plaintiff, and not upon any chapter of plaintiff corporation; the affairs of plaintiff are managed and controlled by its executive committee; the executive committee of plaintiff, provided for by its charter, constitution and by-laws, is the one body connected with plaintiff corporation, empowered by said Act of the Legislature to manage and control said "Alamo property" and said "Alamo Church," and in the name of plaintiff to make contracts and rent same, and to collect and receipt for the rents therefor in the name of plaintiff; the "Alamo property" and the "Alamo Church" are sacred trusts imposed on plaintiff by the State of Texas, to be maintained, controlled and protected by plaintiff through its duly elected and lawfully qualified executive committee; all of the said property, that is to say, the "Alamo property" and the "Alamo Church," is of the market value of two hundred thousand dollars, but by reason of its historical worth, it is valuable beyond price; it is the duty in law and in honor of plaintiff, through its proper executive committee, to care for this sacred property, and to keep clear the title thereto in plaintiff, in accordance with the laws of Texas.

Plaintiff owns and holds in trust funds amounting to over one thousand dollars; said funds are in the custody of plaintiff's duly elected and qualified treasurer, Miss Belle Fenn, and plaintiff's duly elected and legally qualified secretary-general, Mrs. Charles H. Milby, who retained custody of said funds under the control, direction and supervision of plaintiff's executive committee.

The ladies named in paragraph two of the petition constitute the duly elected and legally qualified executive committee of plaintiff, and under the charter, constitution and by-laws of plaintiff are charged with the management and care of the "Alamo property" and "Alamo Church," the funds belonging to plaintiff and held in trust by plaintiff, all relics and the historical documents belonging to plaintiff. Said executive committee is charged with the duty of managing and controlling the affairs of plaintiff, as is provided by the charter and constitution of the organization. The executive committee named in paragraph two has continuously, ever since their election, been in charge and control of the affairs of plaintiff corporation, lawfully exercising the duties imposed upon them in accordance with the authority and power in them vested by the charter, constitution and by-laws of plaintiff, and have ever since their election to said committee, had charge of the custody and control of the "Alamo property," "Alamo Church," all funds belonging to plaintiff, the relics and historical documents belonging to plaintiff. Mrs. Charles H. Milby is the duly elected and legally qualified secretary of plaintiff corporation; and has been ever since such election and is now in charge of the proper books, papers and documents pertaining to said office, together with the seal of the plaintiff corporation, and has ever since her election exercised the duties

imposed upon her as such secretary, and is still the qualified secretary of plaintiff corporation; Miss Belle Fenn is the duly elected and legally qualified treasurer of plaintiff; upon her election she took charge of the funds belonging to plaintiff, and under the control and direction of the executive committee has kept charge and control of said funds ever since her election to said office, and is still in charge and control of same, exercising the duties thereof.

"Plaintiff represents that it is a going concern, carrying out the duties imposed upon it by the laws of the State of Texas and the powers granted to it by its charter and the duties imposed by its constitution, through its legally elected executive committee, as named in paragraph two herein. That it is important to the interests of the property owned by plaintiff as well as property entrusted to plaintiff by the State of Texas, as well as the perpetuation of the memory and spirit of the men and women who have achieved and maintained the independence of Texas, the encouragement of historical research in the earliest records of Texas, the fostering of the preservation of documents and relics, the encouragement of the publication of records of individual service of soldiers and patriots of the Republic, the promotion of the celebration of March 2 and April 21, the securing and hallowing of historical spots, by the erection of monuments thereon, and of cherishing a preservation of the unity of Texas as achieved and established by the fathers and mothers of the Texas Revolution; that the affairs of this plaintiff be managed and controlled by its duly elected and legally constituted officers, the executive committee, and not by other persons who have not been legally elected and are not duly constituted officers and members of the executive committee of plaintiff."

It is charged in the petition that the defendants, together with various other persons to plaintiff unknown, have confederated together for the purpose of wrongfully and unlawfully taking charge of the affairs of plaintiff; that in furtherance of such confederation they have declared themselves to be the executive committee of plaintiff, and are undertaking, in violation of the provisions of the charter and constitution of the association, to manage all the affairs of plaintiff; that they have, without authority, represented and announced that certain persons are vice-presidents of plaintiff association; that one of their number is secretary-general, another assistant secretary-general, another corresponding secretary and assistant treasurer of the association, which is not true, such offices being held and exercised by other members; that Miss de Zavala, who claims and pretends to be chairman of the executive committee, has directed in writing the Planters & Mechanics National Bank of Houston and T. W. House, banker, where plaintiff's funds are deposited not to pay any checks drawn against the same by plaintiff's legally qualified treasurer or secretary, but to pay such funds only to certain of defendants, wrongfully claiming to be authorized to control said funds. The petition, at great length and with much exuberance of diction, charges various acts of interference by defendants, under their claim that they are the executive committee and other officers of plaintiff association, with the business affairs and property rights

of plaintiff, to the serious and substantial damage of plaintiff, and prays for a temporary injunction to be issued instanter, putting a stop to the acts charged specifically, naming them, and that on final hearing the injunction be made perpetual, with prayer for general relief.

To this petition defendants interposed a plea in abatement, alleg-leging that the institution of suit was not authorized either by the members of the association at a regular or special meeting thereof, or by its duly elected executive committee or board of directors act-ing during a recess, but was instituted and prosecuted in the name of the association by a few individual members of such corporation without lawful authority so do to.

As a further ground of abatement of the suit is was alleged that the suit was instituted by certain members of plaintiff corporation for the sole purpose of determining their rights to the offices claimed by them in the said corporation or association; that some of defend-ants themselves, naming them, are the duly elected members of the executive committee, Miss de Zalala being chairman, and other of said defendants, naming them, are respectively the duly elected sec-retary, assistant secretary, treasurer and first vice-president of the association, the said executive committee being under the constitu-tion and by-laws solely authorized to manage and control the business affairs of the corporation in the interim between meetings of the members thereof; that the suit is merely a contest for the offices of the corporation by plaintiffs, and that they have no right to pros-ecute the same in the name of the corporation by injunction, as set up in the petition, but should be required to do so in an action at law in their individual names. And upon the grounds set out they pray that the suit be abated.

Defendants further answered by general demurrer and special ex-ceptions, urged the same grounds as set out in the plea of abatement, and by special answer set out the history of the controversy and alleged that at the annual meeting of the Daughters of the Republic, held on April 19 and 20, 1907, in the city of Austin, the following were elected as officers of said association: Mrs. Anson Jones, presi-dent; Mrs. Wharton Bates, first vice-president; Mrs. J. J. Swan, second vice-president; Mrs. Laura W. Wearington, third vice-presi-dent; Mrs. Jessie Briscoe Howard, fourth vice-president; Mrs. Sara D. Adams, fifth vice-president; Mrs. Sara D. Adams, historian; Miss Mary Briscoe, secretary; Miss Annie Hume, assistant secretary; Mrs. Lucy Sherman Craig, treasurer. That the executive committee or board of directors of said corporation duly elected at the annual meeting of said corporation, held in the city of Austin on April 19 and 20, 1907, are Miss Adina de Zavala, chairman; Mrs. Wharton Bates, Miss Bettie Ballinger, Mrs. L. D. L. Tuttle, Mrs. W. J. Redding, Mrs. Willard Simpson, Mrs. Alminta B. Abney, Mrs. Sue S. LeCand, Mrs. W. E. Craddock, Miss Nellie Lytle, and Miss Mary Briscoe. It is further alleged that after said Austin meeting was called to order and during the proceedings of the meeting some of the ladies at whose instance this suit was brought becoming dissat-isfied with the proceedings attempted to adjourn the meeting and

bolted the convention and left the hall; that the meeting continued in session and transacted its business, and among other business disposed of, it fixed the date for holding the annual meeting for the year 1908 in the city of Beaumont, Texas. The answer also alleges facts showing that those at whose instance the suit was brought were attempting to obtain control of the offices of the association and to manage its affairs in their own interest and for the purpose of diverting the Alamo property from the uses for which it had been purchased and to which it had been dedicated, to commercial uses and to purpose of profit, against the will of the association and a majority of the members thereof, and that such efforts upon their part had precipitated the controversy over the offices of the association which had occasioned the filing of the suit.

All of which was generally and specially denied by plaintiff in a supplemental petition, the further allegations of which need not be here set out.

A temporary injunction in terms prayed for was granted. The court overruled the plea of abatement, and upon trial, without the assistance of a jury, rendered judgment for plaintiff perpetuating the injunction. From the judgment defendants prosecute this appeal.

The fact of the incorporation of plaintiff for the purposes stated in the petition, and the material facts with regard to provisions of the constitution as therein stated, was not disputed. The only questions of fact arise out of the action of the association at its regular meeting in the city of Austin on April 19, 1907. We adopt the finding of the trial court that at the date of said meeting the following were the officers of the association:

Mrs. Anson Jones, president; Mrs. Rebecca J. Fisher, first vice-president; Mrs. Wharton Bates, second vice-president; Mrs. Nannie H. Skinner, third vice-president; Mrs. Edward K. Lewis, fourth vice-president; Mrs. Stephen H. Darden, fifth vice-president; Mrs. Nettie Houston Bringhurst, historian; Mrs. Chas. H. Milby, secretary-general; Miss Belle Fenn, treasurer.

Committee Executive: Mrs. Marie B. Urwitz, Mrs. J. J. McKeever, Jr., Mrs. Cornelia Branch Stone, Mrs. Charles Milby, Mrs. Walter Gresham, Miss Emma K. Burleson, Mrs. M. Wheeler, Mrs. Jas. B. Dibrell, Mrs. Cone Johnson.

And that, under the constitution, these officers held office until the succeeding regular meeting in 1908, the constitution providing for the election of officers biennially, which course has been followed since the creation of the corporation. This conclusion of the trial court is not challenged by appellants in their brief.

This meeting seems to have adjourned in a most unseemly row, precipitated by the unauthorized action of the first vice-president, who not feeling physically able to preside over the proceedings of the meeting and instead of yielding the gavel to the second vice-president, who had the undoubted right to preside in such case, undertook, in the face of the constitution, to substitute another person as such presiding officer in her stead. The president of the association was not present, and, in such case, it was the duty and the right, under the constitution, of the several vice-presidents to

preside in their numerical order from first to fifth. The second vice-president was present and claimed the right to preside, if the first vice-president did not choose to do so, and in this right she was seconded by quite a number of the members. After a tumultuous session in the forenoon under the presidency of the first vice-president, for a part of the time and at other times of the substitute appointed by her, many members protesting and claiming that the second vice-president should preside if the first vice-president did not choose or was not able to do so, the meeting took a recess until two o'clock p. m. At this hour the second vice-president called the meeting to order, but the first vice-president immediately appeared, took the gavel and turned it over to her substitute. The second vice-president, seconded by many members, but less than a majority, still protested and still insisted upon the right of the second vice-president to preside and their right to have her preside, and undertook to appeal from the ruling of the chair, to no avail. There ensued great confusion. The trial court finds, and the finding is supported by the evidence, although there is much evidence to the contrary, that the first vice-president, who had at all times been in the hall, then assumed the chair, when some members offered a motion to adjourn *sine die*. The motion was duly seconded, and was regularly put to the association and adopted, a majority of the members voting in the affirmative. The first vice-president declared the motion carried and the association adjourned *sine die*. There was no division called for and no appeal from the decision of the chair declaring the motion carried. There is much contradiction of the testimony on this point, but there was sufficient evidence to support the findings of the trial court, several of the witnesses testifying very positively in accordance with such findings, while others testified that the whole proceeding was under control of the unauthorized substitute of the first vice-president. In such state of the evidence this court is not authorized to disturb the finding of the trial court.

After such adjournment the first vice-president, together with a majority of the members left the hall, whereupon the second vice-president and those supporting her remained. She assumed the chair and the meeting thus organized proceeded to do business, finally electing a full corps of officers, the executive committee being the persons named as defendants in this suit. In 1908, adopting the findings of the trial court, the annual meeting of the organization was held at San Antonio under the call of the first vice-president aforesaid, who, upon the death of the president in the meantime, assumed the office of acting president. At this meeting there was a full election of officers, the first vice-president being elected president with a string of five vice-presidents, historian, a secretary-general, a treasurer and nine members of the executive committee, being the same persons claimed by appellee in its petition to constitute its officers. In April, 1908, as the trial court finds, those members of the organization who constituted the minority, and who remained in the hall at the Austin meeting, after meeting had been declared adjourned by the first vice-president, met at Beaumont, presided over by the first vice-president elected by them, after such adjourn-

ment. Both of these branches of the association had elected the same person as president, who had died, after the split. At this meeting at Beaumont a full set of officers was elected, consisting of a president, who was the second vice-president ,at the Austin meeting, a full corps of vice-presidents and all the officers, including an executive committee, who are the persons named as defendants in this suit.

There was thus two separate and independent organizations, each claiming to be the only genuine one. The officers elected at the San Antonio meeting are claimed by appellee to be the regular officers of the corporation, and are in possession of the several offices with the perquisites and incidents thereof, including the books, records and other property of the corporation.

We adopt the finding of the trial court to the effect that the officers elected by the minority of the members at the Austin meeting in 1907, and subsequently at the Beaumont meeting, are doing and have done the several acts charged against them by the petition in the way of interference with the management and control, by those claimed by appellee to be its regular officers, of the business affairs and property of the corporation, which action it is the purpose of the suit to enjoin and restrain.

Prior to the bringing of this suit the chairman of the executive committee (as claimed by appellee) by correspondence with the other members of the committee, except two of them, one of whom was ill and the other absent, procured the authority of each to institute this suit in the name of the corporation, but there was no regular meeting of such committee for that purpose, until after the suit was filed. Subsequently there was a regular meeting of the executive committee which ratified the institution of the suit and the form and manner in which it was brought.

The constitution of the association provides that the vice-presidents shall preside in their numerical order in case of the absence of the president or her inability to act.

By their first assignment of error appellants challenge the action of the court in overruling their exceptions to the jurisdiction of the court, upon the grounds, as stated in the several propositions under the assignments, first, that the suit not having been authorized by the members of the association in regular meeting, nor by the action of the executive committee at a regular session thereof, was unauthorized; second, that the authority for bringing the suit was not stated in the petition; and third, that in so far as the subsequent ratification of the institution of the suit by the executive committee at a regular meeting thereof is concerned, the same was not pleaded and can not be considered.

As to the second ground of objection, we are of the opinion that in this, as in the case of a suit by any other private corporation, it is not necessary to allege in the petition that the suit is authorized by the board of directors or other governing body of the corporation. Appellants cite no authority in support of their contention to the contrary.

Passing by the contention that the suit being thus shown affirma-

tively to have been brought without authority of the executive committee by action of the committee at a regular meeting thereof, but only by the individual action of the members authorizing the same, which, under the authority of Fayette v. Krause, 31 Texas Civ. App., 569, may be well taken (see also 3 Thompson, Corp., secs. 3905-3908; 7 id., sec. 8476), we are of the opinion that the subsequent ratification of such action by the committee at a regular meeting in proper form, operated to legalize such action from the beginning. (Brown v. McConnell, 56 Texas, 232; 7 Words & Phrases, title, "Ratification," and cases cited.)    This is not, in fact, questioned by appellants, but it is insisted that in order to avail of such ratification it must be pleaded.    We do not think this is correct.    (16 Enc. Pl. & Pr., p. 904, and cases cited.)

The second assignment of error is as follows:    "The court erred in holding as a matter of law that this suit, which was really a contest over the offices of the Daughters of the Republic, between the members of said organization, was properly instituted in the name of the corporation."    Under this assignment the proposition is stated, "A bill in equity for an injunction seeking to restrain those acting and claiming to be officers or directors of a corporation, which has for its real and only purpose the determination of the right to such offices, as between several claimants, can not be maintained."

With this question, as it arises upon the facts of the present case, we have had much difficulty.    The following cases cited by appellants seem to tend to support the proposition as it applies to this case. Carmel Gas Co. v. Small, 47 N. E., 11; Jenkins v. Baxter, 28 Atl., 682; Hughes v. Parker, 20 N. H., 58.    But we think there is a clear distinction between them and the present case.    The rule is thus stated in 5 Pomeroy's Equity Jurisprudence, sec. 307:    "A court of equity will not primarily take jurisdiction to determine the legality of directors, or to remove a director who is in possession of the office.    The court will inquire into the regularity of the election or the right of the person to the office only when the question arises incidentally and collaterally in a suit of which the court has rightful jurisdiction on other grounds."    We think the facts of this case bring it within the latter clause.    Those persons chosen as officers at the San Antonio meeting are in full possession of their respective offices, and are in full discharge of the duties, and in full enjoyment of the privileges thereof.    They are unquestionably the *de facto* officers of the association.    The court has found that they are the *de jure* officers as well, but we will let that pass.    They have no need to sue for the possession of their respective offices, nor can it said that the defendants have intruded into or usurped those offices, so as to authorize a *quo warranto* proceeding under the statute.    They are, however, by their acts interfering with the management of the business affairs of the corporation to its manifest detriment, and in such a manner as to justify an appeal to the equitable remedy of injunction for protection.    When, in answer to such appeal, the defendants seek to justify their acts by their claim that they have legal right to do what they are doing, as officers of the association, this issue must be determined, and the court, having

acquired jurisdiction to interfere by way of injunction to protect the interest of the corporation, may, as incidental to that, determine whether defendants have the right as officers of the corporation to do what they are doing. The corporation has an interest in the subject entirely independent of the individual rights of the rival claimants of the offices, that is, the right that its business be not obstructed, but be carried on in accordance with the purposes of its charter, and can not be required to submit to this state of confusion in its business affairs until the matter of who constitute *de jure* its officers can be settled in a private litigation between them. These views are, we think, sustained by authority. (Chicago Macaroni Mfg. Co. v. Boggiano, 67 N. E., 17; Johnston v. Jones, 23 N. J. Eq., 216.) The second assignment of error and the several propositions thereunder are overruled.

There is no merit in the third assignment of error, which, with the several propositions thereunder, is overruled.

The fourth assignment of error challenges the conclusion of fact of the trial court that the first vice-president was at any time in charge of the annual meeting at Austin in 1907. The fifth assignment assails the judgment as contrary to and unauthorized by the evidence, and also the conclusion of law of the trial court. The ground of objection urged is, that the court concluded as a matter of law that the appointment by the first vice-president of a substitute to preside over the meeting was void, and that any business done while she was so presiding was null and void, and the great weight and preponderance of the evidence shows that if the second vice-president was not presiding at the time of the attempted adjournment, the said substitute was so presiding or attempting to preside at that time. These two assignments with the propositions thereunder present the question of the legality of the adjournment of the meeting at Austin, immediately after the meeting reconvened after noon.

If it were true, as stated by appellants, that the finding of fact referred to by the trial court was against the great weight and preponderance of the evidence, we would probably be thereby authorized to set aside such finding, and substitute our own, but we do not agree that the finding is of this character. All of the findings of fact of the trial court with regard to what occurred at the meeting in question appear to us to be well supported by the testimony of witnesses, especially as to the fact that the first vice-president was presiding over the meeting, in person, when the motion to adjourn was made; that she herself put the motion, declared the result and in accordance with the sense of the majority then present declared the meeting adjourned *sine die.* Appellants seek to avoid the effect of this evidence by the contention that after the first vice-president had declared her inability to preside, and had installed her substitute, she forfeited her right to further preside at the meeting. To this we can not agree, and it appears from all of the testimony that this was not the opinion of the second vice-president and those acting with her in resisting the arbitrary and unwarranted conduct of the first vice-president. This testimony shows that only the right of the

substitute to preside was resisted, and that whenever she was ousted and the first vice-president appeared, her right to preside was immediately conceded. It may be, as contended by appellants, that the first vice-president was only intent, not upon presiding herself, but in compelling submission to her desire that the person chosen by her and not the one named by the constitution should preside in her stead, but amid all the bewildering confusion the fact stands out, as found by the court and well supported by the evidence, that the first vice-president was in the chair, gavel in hand, when the motion to adjourn *sine die* was made; that the motion was regularly made and put by her to the 'members; that a viva voce vote was taken thereon, and that the first vice-president declared that the result was in favor of such adjournment, and thereupon declared the meeting adjourned *sine die,* there being no call for a division and no appeal from the ruling of the chair. This finding is absolutely conclusive of the legality of the adjournment, unless we concede appellants' contention that the first vice-president, after having once installed her substitute, had no right thereafter to return to the chair and resume her authority. In this we think appellants are clearly wrong. And it is not to be forgotten that the first vice-president had with her a majority of the members present at the meeting. We do not mean by this that a majority, no matter how large, could deprive the minority of their constitutional right to have the second vice-president preside, in case of the absence or inability of the first vice-president, but they had the right to adjourn the meeting, provided it was done in a proper manner.

The first vice-president in her testimony naively stated that she thought the circumstances justified her in setting aside the provision of the constitution in question. In this she was greatly in error, and the minority had a perfect right to resist her unlawful action, but this does not affect the essential fact that, at least, and in an entirely constitutional way, the meeting was adjourned *sine die,* which settles the question of who are the *de jure* officers of the association, in favor of appellees' contention.

The fourth and fifth assignments of error must be overruled, with the several propositions thereunder.

The other assignments of error do not require further discussion, but are severally overruled.

We find no error in the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.