COURT OF APPEALS

                                                SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                NO.
 2-09-405-CV

 

 

IN RE FRANKLIN SALAZAR; JO ANN 

PATTON; WALTER VIRDEN, III; ROD 

BARBER; CHAD BATES; JACK LEO IKER; 

CORPORATION FOR THE EPISCOPAL 

DIOCESE OF FORT WORTH; AND THE 

EPISCOPAL DIOCESE OF FORT WORTH                                                            

 

                                                       ------------

 

                                           ORIGINAL
PROCEEDING

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I.  Introduction








Relators Franklin Salazar, Jo Ann
Patton, Walter Virden, III, Rod Barber, Chad Bates, Jack Leo Iker, Corporation for the Episcopal Diocese of Fort Worth
(the Corporation), and The Episcopal Diocese of Fort Worth (the Fort Worth
Diocese), Defendants in the underlying cause, have filed a petition for writ of
mandamus complaining of the September 16, 2009 order entered by Respondent,
Judge John P. Chupp of the 141st District Court,
which granted in part and denied in part Relators=
motion to show authority under rule 12 of the rules of civil procedure.  See Tex. R. Civ. P. 12.  Relators ask this
court to order the trial court to grant complete relief on their motion to show
authority, bar attorneys Jonathan Nelson and Kathleen Wells from representing
the Corporation and the Fort Worth Diocese in the underlying suit, and Adismiss
the underlying case insofar as it is purportedly brought on behalf of the
Corporation or the [Fort Worth] Diocese.@  We conditionally grant Relators=
petition for writ of mandamus and vacate our November 16, 2009 order staying
further proceedings in the trial court.

                                                  II.  Background

The
underlying suit involves a dispute over control of the property belonging to
the Fort Worth Diocese that is held by the Corporation.  The suit was brought by The Episcopal Church
(TEC), also naming as plaintiffs the Fort Worth Diocese and the Corporation,
against Relators as Defendants.  TEC describes itself as Aa
member of the Anglican Communion, a worldwide fellowship of autonomous regional
churches known as >Provinces,=
each [of which] forms its own constituent units [] within its own geographical
territory.@ 








The
Fort Worth Diocese, a Texas unincorporated association, was formed in 1983 and
thereafter entered into membership with TEC. 
The Corporation is a Texas non-profit corporation that holds, manages,
and administers all property and funds acquired by gift, will, or otherwise for
the use and benefit of the Fort Worth Diocese. 
It is undisputed that Relator Iker was not
appointed by TEC but was duly elected by delegates at a regular meeting of the
Fort Worth Diocesan Convention as Bishop of the Fort Worth Diocese, pursuant to
the Constitution of the Fort Worth Diocese, and ordained in 1993.  Upon his installation, Bishop Iker automatically became Chairman of the Board of Trustees
of the Corporation.  The other individual
Relators were likewise not appointed but were duly
elected and received their offices as Trustees of the Corporation at a Fort
Worth Diocesan Convention. 








In
2006, based on actions allowed by TEC that many believed violated the
traditional and foundational purposes of the Church, Relators
filed Amended and Restated Articles of Incorporation, allegedly in accordance
with Texas law, removing any reference to TEC in the Corporation=s
affairs.  At the two immediately
following Annual Conventions of the Fort Worth Diocese in 2007 and 2008, a
majority of the delegates to those Diocesan Conventions voted to amend the Fort
Worth Diocese=s Constitution and to withdraw
the Fort Worth Diocese from membership in TEC. 
Then, on November 15, 2008, the Convention of the Fort Worth Diocese
voted to enter into membership, and entered into membership, with the Anglican
Province of the Southern Cone, a different province of the Anglican Communion.

On
November 20, 2008, a disciplinary review committee of TEC announced that Bishop
Iker had Aabandoned
the communionA of the Church.  The Presiding Bishop of TEC declared that
Bishop Iker was removed from the Ordained Ministry of
TEC and thereby Aceased to be a bishop@
of TEC or the Fort Worth Diocese.  In
February 2009, the Presiding Bishop of TEC convened a Aspecial
meeting@ of the Fort Worth Diocesan
Convention, consisting of the minority that had not prevailed at the two
previous annual conventions, and elected Edwin Gulick
as AProvisional
Bishop@ of the Fort Worth Diocese and
Chairman of the Board of Trustees for the Corporation.  The Convention further voted to reverse the
constitutional amendments adopted at the two previous Conventions and declared
all relevant diocesan offices of the Fort Worth Diocese Avacant.@  Bishop Gulick then
appointed replacements for all offices, including the Trustees of the
Corporation.








Bishop
Gulick and the newly appointed Trustees (the Gulick Group) retained Jonathan Nelson and Kathleen Wells
as attorneys purportedly to represent the Fort Worth Diocese and
Corporation.  Those attorneys, joined by
attorneys for TEC, then filed the underlying suit in the names of the Fort
Worth Diocese and the Corporation, but admittedly only on behalf of the Gulick Group, against Bishop Iker
and the elected Trustees who were purportedly removed and replaced (the Iker Group), alleging that Bishop Iker
is no longer a bishop of the Church and that the five named Defendant Trustees
of the Corporation have left the Church. 
By the suit, TEC and the other two named plaintiffs seek control of the
church property, including the name and seal of the Fort Worth Diocese, and a
declaratory judgment as to the true identity of the current Bishop and Trustees
of the Corporation.  In addition to
Bishop Iker and those five named Defendant Trustees,
individually, the suit also names as a Defendant AThe Anglican Province of the Southern Cone=s
>Diocese
of Fort Worth= holding itself out as >The
Episcopal Diocese of Fort Worth.=@

Relators answered and filed a
third-party petition against the individual members of the standing committee
appointed by Bishop Gulick and a plea in intervention
by the Corporation.  In response to a
motion for summary judgment filed by the plaintiffs, Relators
filed a motion for continuance and their rule 12 motion to require Mr. Nelson
and Ms. Wells to show their authority to prosecute the suit on behalf of the
Fort Worth Diocese and the Corporation.[1]  It is the trial court=s
order on the rule 12 motion from which Relators seek relief.








III.  Standard of Review

Mandamus
relief is proper only to correct a clear abuse of discretion when there is no
adequate remedy by appeal.  In re
Columbia Med. Ctr. of Las Colinas, 290 S.W.3d
204, 207 (Tex. 2009) (orig. proceeding). 
A trial court abuses its discretion if it incorrectly interprets or
improperly applies the law.  In re Dep=t
of Family & Protective Servs.,
273 S.W.3d 637, 642B43
(Tex. 2009) (orig. proceeding); Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).








Absent
extraordinary circumstances, mandamus will not issue unless the relator lacks
an adequate remedy by appeal.  In re
Van Waters & Rogers, Inc.,145 S.W.3d
203, 210B11 (Tex. 2004) (citing Walker,
827 S.W.2d at 839).  Whether a clear abuse of discretion can be
adequately remedied by appeal depends on a careful analysis of costs and
benefits of interlocutory review.  In
re McAllen Med. Ctr., Inc., 275 S.W.3d 458, 464 (Tex.
2008) (orig. proceeding).  As this
balance depends heavily on the circumstances, it must be guided by analysis of
principles rather than simple rules that treat cases as categories.  Id. 
An appellate court should consider whether mandamus will allow the court
to give needed and helpful direction to the law that would otherwise prove
elusive in appeals from final judgments and whether mandamus will spare
litigants and the public the time and money utterly wasted enduring eventual
reversal of improperly conducted proceedings. 
In re Team Rocket, L.P., 256 S.W.3d
257, 262 (Tex. 2008) (orig. proceeding).

IV.  The Rule 12 Order

After
two hearings at which the trial court received affidavits, testimony,
documents, and arguments of the parties, the trial court entered an order
titled AOrder Granting Rule 12 Motion@
in which the trial court found that Mr. Nelson and Ms. Wells Ahave
not discharged their burden of proof that they were hired by individuals
holding positions at the time of [their] hiring within The [Fort Worth Diocese]
and [The Corporation] that are associated with Bishop Iker@
and barred those attorneys from appearing in the trial court as attorneys Afor
the [Fort Worth Diocese] and [The Corporation] that is associated with Bishop Iker.@  However, the order of the trial court did not
bar Mr. Nelson and Ms. Wells from appearing in the case on behalf of the Fort
Worth Diocese and Corporation generally, nor did it strike the pleadings on
behalf of those entities after an authorized person failed to appear.  

Thus,
Relators interpret the trial court=s
ruling as a partial denial of their requested relief and ask us to order the
trial court to Agrant their motion to show
authority and to dismiss the underlying case insofar as it is purportedly
brought on behalf of the Corporation or the [Fort Worth] Diocese.@

In
relevant part, rule 12 states:

A party in a suit or proceeding pending in a court of this state may,
by sworn written motion stating that he believes the suit or proceeding is
being prosecuted or defended without authority, cause the attorney to be cited
to appear before the court and show his authority to act. . . . At the hearing
on the motion, the burden of proof shall be upon the challenged attorney to
show sufficient authority to prosecute or defend the suit on behalf of the
other party. Upon his failure to show such authority, the court shall refuse
to permit the attorney to appear in the cause, and shall strike the pleadings
if no person who is authorized to prosecute or defend appears.

 

Tex. R. Civ. P. 12
(emphasis added).








The
emphasized language states that once the trial court finds the challenged
attorney has not met her burden of proof, the trial court Ashall@
take two additional steps: (1) bar the challenged attorney from appearing in
the case and (2) strike the pleadings if an authorized person does not
appear.  Id.   The term Ashall@
as used in a statute is generally recognized as Amandatory,@
creating a duty or obligation.  Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex.
2001) (citing Tex. Gov=t
Code Ann. ' 311.016(2) (Vernon 2005)).  Because we apply the same rules of
construction to the rules of civil procedure as we apply to statutes, we
conclude that the requirements of rule 12 that follow from a finding that the
attorneys failed to discharge their burden of proof to show their authority are
mandatory.  See BASF Fina Petrochemicals L.P. v. H.B. Zachry Co., 168 S.W.3d 867,
871 (Tex. App.CHouston
[1st Dist.] 2004, pet. denied) (recognizing principles of statutory
construction apply to rules of civil procedure); In re R.C.M.,
No. 02-09-00080, 2010 WL 1267759, at *5 (Tex. App.CFort
Worth Apr. 1, 2010, no pet.) (mem.
op.) (same); see also Helena Chem. Co., 47 S.W.3d at 493 (holding term Ashall@
is generally construed as mandatory); Thordson
v. City of Houston, 815 S.W.2d 550, 551 (Tex.
1991) (holding requirement of rule that judge Ashall@
set hearing is mandatory). 

Although
the trial court found that Mr. Nelson and Ms. Wells did not meet their rule 12
burden of proof, the trial court=s
finding was only that they failed to discharge that burden to show that they Awere
hired by individuals holding positions . . . within the [Fort Worth Diocese]
and [The Corporation] that are associated with Bishop Iker.@  Additionally, the trial court barred Mr.
Nelson and Ms. Wells only from appearing in the case as attorneys Afor
the [Fort Worth Diocese] and [The Corporation] that is associated with Bishop Iker@
and did not strike the pleadings filed by Mr. Nelson and Ms. Wells on behalf of
the Fort Worth Diocese and the Corporation.

                                      V.  Contentions of the Parties








Relators contend that the trial
court abused its discretion by not striking the pleadings filed by Mr. Nelson
and Ms. Wells in the names of the Fort Worth Diocese and the Corporation
because it is undisputed that these attorneys were not hired by the duly
elected Iker Group but by the Gulick
Group, which merely claims to be the new Provisional Bishop and five newly
appointed Trustees that have purported to sue in the names of the Fort Worth
Diocese and the Corporation.  Relators argue that rule 12 is a proper vehicle to decide
not only whether an attorney has authority to represent a party in a particular
suit but also whether those hiring the attorney have authority to do so on
behalf of the party they purport to represent. 
Accordingly, Relators urge that the issue of
the authority of the Gulick Group to hire Mr. Nelson
and Ms. Wells on behalf of the Fort Worth Diocese and the Corporation should be
decided based upon neutral principles of law. 
See Jones v. Wolf, 443 U.S. 595, 603B05,
99 S. Ct. 3020, 3025B26
(1979) (holding civil courts may adopt neutral principles of law as means of
adjudicating intra-church property ownership disputes so long as resolution entails
no inquiry into religious doctrine).

Relying
on the Constitution of the Fort Worth Diocese and the requirements of the Texas
Non-Profit Act as well as the Constitution and by-laws of the Corporation,
which holds title to the funds and endowments in question, Relators
argue that no persons other than the Individual Relators
had authority to hire attorneys for the Corporation or the Fort Worth Diocese,
and because the attorneys failed to establish any other person=s
authority to do so, the trial court abused its discretion in denying the motion
with respect to the Corporation and the Fort Worth Diocese.








Real
Parties in Interest respond that the trial court actually denied Relators=
motion, as shown by the trial court=s
comment during the hearing that the identity issue would be better decided by a
ruling on the merits than under rule 12. 
Real Parties in Interest argue that the issue of the identity of the
true Bishop and Trustees lies at the heart of the suit, that a rule 12 motion
is not an appropriate vehicle for deciding that issue in the underlying case,
and that the trial court acted within its discretion by postponing that
decision until the merits are decided in the normal course of the litigation.








Real
Parties in Interest further contend that, even if the trial court had reached
the identity issue, it would have been required to defer to TEC as the sole
arbiter of that issue, and that TEC has already determined that Relators C
Bishop Iker and the elected Trustees named as
Defendants below C
are no longer serving as Bishop and Trustees of the Fort Worth Diocese and
Corporation but have abandoned the Fort Worth Diocese and vacated their
offices.  Real Parties in Interest
contend that, under the First Amendment, the identity of the Bishop and the
Trustees are Aecclesiastical@
questions and that this Court must defer to the decision of TEC that the Gulick Group had the authority to hire Mr. Nelson and Ms.
Wells on behalf of the entities in question. 
See Serbian E. Orthodox Diocese for U.S. of Am. and Canada v. Milivojevich, 426 U.S. 696, 710, 717, 96 S. Ct. 2372,
2381, 2384 (1976) (holding, under First Amendment, decision of highest
ecclesiastical tribunal of hierarchical church must be accepted on matters of
discipline, faith, ecclesiastical rule, custom, or law and that defrocking of
bishop was at Acore@
of ecclesiastical concern).  Thus, Real
Parties in Interest argue that we should deny Relators=
petition for writ of mandamus.

                                                    VI.  Analysis

A.  The Trial Court=s
Abuse of Discretion

We
do not reach the question of the true identity of the Bishop and Trustees
because we agree that the trial court deferred a
resolution of that issue pending a substantive motion or further proceedings on
the merits, nor do we express any opinion concerning the propriety of resolving
this intra-church dispute through litigation in a Texas state court.  We do, however, apply the plain language of
rule 12 in the context of the proceeding as it has been presented to us by the
parties.








In
that regard, neither side has challenged the trial court=s
finding that Mr. Nelson and Ms. Wells did not discharge their burden of proof
that they were hired by individuals holding positions at the time of their
hiring within the Fort Worth Diocese and the Corporation that were associated
with Bishop Iker. 
Absent such proof, while Mr. Nelson and Ms. Wells may be authorized to
represent the individuals who hired them, these attorneys have not established
their authority to represent or appear on behalf of the Fort Worth Diocese and
the Corporation as required by rule 12.

It
is undisputed that there is only one Corporation and only one Fort Worth
Diocese, regardless of how those entities are named or characterized in the
underlying suit C whether as entities, as
individuals Aholding themselves out@
as those entities, or as individuals Aassociated
with@
one or the other Bishop.  There is a
single Fort Worth Diocese and Corporation, which both a majority and a minority
faction claim to control.[2]  The attorneys whose authority is challenged
are either authorized to represent those two entities or they are not.  But the trial court has barred them from
representing only the Corporation and the Fort Worth Diocese associated with
the Iker Group. 
We are aware of no statute or common law rule allowing attorneys to
prosecute a suit in the name of a corporation or other entity on behalf of only
one faction or part of that corporation or entity against another part or
faction.[3]









Additionally,
we are guided by the rule emphatically stated in Rule 1.12 of the Texas
Disciplinary Rules of Professional Conduct that A[a]
lawyer retained or employed by an organization represents the entity,@
not its directors, officers, employees, members, or other constituents.  Tex. Gov=t
Code Ann. Title 2, Subt. G, App. A, Art. 10, ' 9, Rule 1.12 (Vernon Supp. 2009).  This rule reflects established law that A[i]n a corporation=s
affairs, there is but one client C
the corporation.@ 
In re Marketing Investors Corp., 80 S.W.3d
44, 49 (Tex. App.CDallas
1998) (orig. proceeding) (quoting Commodity Fixtures Trading Comm=n
v. Weintraub, 471 U.S. 343, 348, 105 S.
Ct. 1986, 1991 (1985)).  A  lawyer representing
a corporation and the corporation have a fiduciary relationship.  See Bryan v. Bartlett, 435 F.2d 28, 37 (8th Cir. 1970), cert. denied, 402 U.S.
915 (1971).  Thus, a lawyer may not be
hired to represent a corporation by one of two factions in the organization
against the other faction.  See Tex.
Gov=t
Code Ann. Title 2, Subt. G, App. A, Art. 10, ' 9, Rule 1.12, cmt.
4.  Because the interests of the
individuals within the Fort Worth Diocese and the Corporation associated with
Bishop Iker are adverse to those associated with
Bishop Gulick, by whom Mr. Nelson and Ms. Wells were
hired, those attorneys may represent the latter individuals but not the
entities when they did not discharge their burden of proving authority to do
so. 








The
trial court did not determine on the merits which Bishop and which Trustees are
the authorized persons within the Corporation and the Fort Worth Diocese, nor
do we.  The question of Aidentity@
remains to be determined in the course of the litigation.  For the purposes of the rule 12 motion,
however, the effect of the trial court=s
order is that Mr. Nelson and Ms. Wells have not established authority to
represent the Fort Worth Diocese and the Corporation.  Given the mandates of rule 12, it was not
within the discretion of the trial court not to strike the pleadings filed by
Mr. Nelson and Ms. Wells on behalf of the Corporation and the Fort Worth
Diocese and not to bar those attorneys from participating in the cause on
behalf of the Corporation and the Fort Worth Diocese.  See Thordson,
815 S.W.2d at 551 (holding, under language of rule 165a(4) requiring that judge Ashall@
set hearing on motion to reinstate as soon as practicable, it was not within
trial court=s discretion to fail to hold a
hearing on motion to reinstate). 
Therefore, the trial court clearly abused its discretion.

B.  No Adequate Remedy by Appeal








Having
held that the trial court clearly abused its discretion, we must still
determine whether Relators have an adequate remedy by
appeal.  The supreme court has explained
that A[m]andamus review of incidental, interlocutory rulings by the
trial courts unduly interferes with trial court proceedings, distracts
appellate court attention to issues that are unimportant both to the ultimate
disposition of the case at hand and to the uniform development of the law, and
adds unproductively to the expense and delay of civil litigation.@  In re Prudential Ins.
Co. of Am., 148 S.W.3d 124, 136 (Tex. 2004).  However, the court has further explained,

Mandamus review of significant rulings in exceptional cases may be
essential to preserve important substantive and procedural rights from
impairment or loss, allow the appellate courts to give needed and helpful
direction to the law that would otherwise prove elusive in appeals from final
judgments, and spare private parties and the public the time and money utterly
wasted enduring eventual reversal of improperly conducted proceedings.

 

Id.  This is an exceptional
case justifying mandamus relief because the failure to correct the trial court=s
abuse of discretion would Aso
skew[] the litigation process that any subsequent
remedy by appeal [would be] inadequate.@  Travelers Indem. Co. of Conn. v. Mayfield, 923 S.W.2d 590, 595 (Tex. 1996) (orig. proceeding) (granting
mandamus relief where trial court=s
abuse of discretion by requiring a party to advance litigation costs of the
opposition in addition to its own expenses so Aradically
skew[ed] the procedural dynamics of the case@
that any subsequent remedy by appeal was inadequate); see also TransAm. Nat. Gas Corp. v. Powell, 811 S.W.2d 913, 919 (Tex. 1991) (eventual remedy by appeal from
trial court=s interlocutory order imposing
death penalty sanction is inadequate because A[t]he
entire conduct of the litigation is skewed@
by imposition of the sanction).








Because
a corporation cannot sue itself, the trier of fact
will be unnecessarily confused by presentations from two opposing factions who
claim to be the Corporation and the Fort Worth Diocese.  Unless the trial court=s
order is modified to strike the pleadings filed by Mr. Nelson and Ms. Wells on
behalf of the Corporation and the Fort Worth Diocese and to bar those attorneys
from appearing in the underlying cause as attorneys of record for the
Corporation and the Fort Worth Diocese, confusion in the litigation will be
perpetuated, including the appearance that the issue is already resolved in
favor of one party before the questions of identity and title to the property
held by the Corporation and the Fort Worth Diocese are determined in the course
of the litigation.  Moreover, as the
parties are currently postured, any judgment against the Iker
Group would be reversible because the Iker Group was
not shown to have authorized bringing this suit on behalf of the Corporation or
the Fort Worth Diocese.  See City of
Grand Prairie v. Finch, 294 S.W.2d 851, 853 (Tex.
Civ. App.CDallas
1956, no writ) (noting that a finding that a party produced no evidence of the
authority with which the suit was prosecuted is ordinarily reversible
error).  An appeal after final judgment
would be inadequate because the time and money for trial as the parties are
currently named and aligned would be wasted in enduring a proceeding that
concludes without a binding judgment.[4]  Therefore, we hold that Relators
do not have an adequate remedy by appeal.

                                                 VII.  Conclusion

We
conditionally grant the writ of mandamus and direct the trial court to modify
its order of September 16, 2009 to follow the mandates of rule 12 and to strike
the pleadings filed by Mr. Nelson and Ms. Wells on behalf of the Corporation
and the Fort Worth Diocese and bar them from appearing in the underlying cause
as attorneys of record for those named plaintiffs.  If the trial court fails to do so, the writ
will issue.

 

 

ANNE GARDNER

JUSTICE

 

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

 

DELIVERED:  June 25, 2010











[1]Relators do not contest
the authority of the attorneys for TEC to prosecute the underlying suit on its
behalf.





[2]Cf. De Zavala v.
Daughters of the Repub. of Tex., 58 Tex. Civ. App. 19, 23B24, 124 S.W. 160,
162 (Tex. Civ. App.CGalveston 1909,
writ ref=d) (determining
which of two factions constituted properly elected officers that represented
organization but noting that, in effect, actions of rival factions constituted
two separate corporations).





[3]We express no
opinion as to whether a derivative action may be maintained by members of a
non-profit entity on its behalf.  See
Flores v. Star-Cab Co-Op. Ass=n, Inc., No.
07-06-00306, 2008 WL 3980762, at *7 (Tex. App.CAmarillo, Aug.
28, 2008, pet. denied) (mem. op.) (noting
lack of statutory authority for and not deciding issue).





[4]We express no
opinion on the merits of the underlying suit and simply note that this is one
of the possible difficulties that might occur if the trial court=s order is not
modified.