**In re VAN WATERS & ROGERS, INC., Relator.**

No. 03–0777.

Supreme Court of Texas.

Sept. 3, 2004.

**20.** *Id.* at 351, 104 S.Ct. 2450.

Lansford O. Ireson, Gina Lucero Miller, Ireson & Weizel, P.C., Karen K. Maston, Baker & Botts, L.L.P., Houston, Eduardo R. Rodriguez, Rodriguez, Colvin, Chaney & Saenz, L.L.P., Brownsville, James L. Moore, Baker & Hostetler, L.L.P., Houston, E. James Rausch, Rausch Law Office, Granbury, James B. Galbraith, McLeod Alexander Powel & Apffel, P.C., Galveston, W. Wendell Hall, Robert G. Newman, Fulbright & Jaworski L.L.P., San Antonio, Bradley A. Jackson, Ben L. Reynolds, Royston Rayzor Vickery & Williams, L.L.P., Houston, William A. Abernethy, Meredith Donnell & Abernethy, P.C., Corpus Christi, Adrian Rafael Martinez, Meredith Donnell & Abernethy, P.C., McAllen, Miller Meredith, Corpus Christi, Arnulfo M. Acosta, Law Office of Arnulfo Acosta,

Pharr, Arthur R. Almquist, Mehaffy & Weber, P.C., Houston, Kay Andrews, Brown McCarroll, LLP, Austin, Robert Valadez, Shelton & Valadez, P.C., San Antonio, G. Don Schauer, Schauer & Simank, P.C., Corpus Christi, Michael M. Gibson, Bayko Gibson Carnegie Hagan Shoonmaker & Meyer LLP, Houston, TX, for other interested parties.

Joseph A. Garnett, Sheehy Serpe & Ware, P.C., Houston, Marcy H. Greer, Fulbright & Jaworski L.L.P., Norton A. Colvin Jr., Rodriguez Colvin, Chaney & Saenz, L.L.P., Brownsville, and Andrew C. Schirrmeister III, Schirrmeister Ajamie, L.L.P., Kelly Dick Brown, Crain Caton & James, and Robert E. Morse III, Crain Caton & James, P.C., Robert Scott, Abrams Scott & Brickley, L.L.P., Houston, Lisa Ann Shub, Robert G. Newman, Rosemarie Kanusky, Fulbright & Jaworski L.L.P., San Antonio, TX, for Relator.

Francisco J. Rodriguez, Rodriguez Tovar & De Los Santos, LLP, Keith C. Livesay, Livesay Law Office, McAllen, TX, for Respondent.

PER CURIAM.

The issue in this mandamus proceeding is whether the trial court erroneously consolidated for trial the workplace toxic tort claims of twenty plaintiffs against nine defendants. Because we hold that the trial court abused its discretion and the defendants have no adequate remedy by appeal, we conditionally grant mandamus relief.

The underlying litigation was filed in 1994 by 454 plaintiffs against approximately fifty-five defendants. The plaintiffs are former employees of the Parker–Hannifin Corporation who worked at Parker's O-ring seal manufacturing plant in McAllen, Texas. The plaintiffs, all represented by the same counsel, allege injuries caused by workplace exposure to a combination of chemicals and products—to which they re-fer to as a "toxic soup." Plaintiffs allege that the chemicals were made or supplied to the plant by the defendants. The trial court consolidated the claims of twenty of the plaintiffs and set the claims for trial. Nine defendants seek relief from the consolidation order.

Each of the plaintiffs in the twenty consolidated cases was employed at the McAllen plant when it closed its doors in 1992, but the plaintiffs' start dates at the plant range from 1975 to 1988. The twenty plaintiffs held a combined thirty-five different jobs during their tenures at the plant, and most of the jobs were shared by only a few plaintiffs. No single job was held by all twenty plaintiffs. The Parker–Hannifin facility was also comprised of several buildings, and workers with different jobs worked in different areas of the plant. Employees were often segregated from other areas, and the plant had multiple air conditioning systems and downdraft tables that limited chemical exposure to particular areas. The twenty plaintiffs allege an aggregate of more than fifty-five injuries or symptoms, many of which are not shared, but the most common being headaches, eye irritation, nose irritation, skin irritation, and throat irritation.

This is the third petition for writ of mandamus we have considered in this case. In 1997, the trial court issued three orders: 1) consolidating twenty plaintiffs for trial; 2) limiting the defendants' discovery to those twenty plaintiffs and abating all discovery for the remaining 434 plaintiffs; and 3) denying the defendants' request to compel an answer to an interrogatory that would have revealed all physicians who linked any of the plaintiffs' injuries to exposure to the defendants' products. The defendants sought mandamus relief regarding each of the three orders. We denied all relief without prejudice to give the trial court an opportunity to reconsider

the discovery abatement order in light of *In re Colonial Pipeline Co.*,[1] which was issued while the petition was pending.[2] We also suggested that the trial court reconsider the interrogatory order should it determine that discovery should not be abated.[3] We did not address the consolidation issue at that time.

The defendants asked the trial court to reconsider the previous orders in light of *In re Colonial Pipeline Co.* After almost a year, the trial court had not ruled on the motion, but had allowed plaintiffs' counsel to submit a different group of plaintiffs for trial. The defendants again sought mandamus relief, alleging insufficient discovery and improper consolidation. The court of appeals granted partial relief as to the defendants' request that plaintiffs supplement their answers to the interrogatory concerning their physicians.[4] This Court granted further relief by directing the trial court to vacate its orders that abated discovery and allowed the plaintiffs to select the claims to be tried first.[5] With regard to the consolidation issue, we explained that the trial court should consider the factors established in *In re Ethyl Corp.*[6] and *In re Bristol–Myers Squibb*,[7] and could do so only after adequate discovery was completed.[8]

Plaintiffs subsequently moved to consolidate for trial the original twenty plaintiffs from the first mandamus. A sixteen-page chart of the plaintiffs and their job histo-ries and symptoms was submitted in support of the motion. The defendants objected to the nominated group of plaintiffs, arguing that only one plaintiff should be tried at a time. The trial court granted the plaintiffs' motion and issued the current consolidation order, stating that the court was "of the opinion the trial Plaintiffs ... [meet] the criteria enunciated by the Supreme Court" and should be consolidated for trial. The defendants requested relief from the court of appeals, which was denied in a short per curiam opinion.

■ In determining whether various claims are appropriate for consolidation, "the dominant consideration in every case is whether the trial will be fair and impartial to all parties."[9] Consolidation should be avoided if it would cause " 'confusion or prejudice as to render the jury incapable of finding the facts on the basis of the evidence.' "[10] If an injustice will result from consolidated trials, a trial court "has no discretion to deny separate trials."[11]

■ To aid in the determination of whether consolidation is appropriate in a mass tort case alleging exposure in a workplace, this Court in *Ethyl* adopted the "Maryland factors": (1) whether the plaintiffs shared a common work site; (2) whether the plaintiffs shared similar occupations; (3) whether the plaintiffs had similar times of exposure; (4) whether the

1. 968 S.W.2d 938 (Tex.1998).

2. *In re Van Waters & Rogers, Inc.*, 988 S.W.2d 740, 741 (Tex.1998) (*Van Waters I* ).

3. *Id.*

4. *In re Van Waters & Rogers, Inc.*, 31 S.W.3d 413, 421 (Tex.App.—Corpus Christi 2000, orig. proceeding).

5. *In re Van Waters & Rogers, Inc.*, 62 S.W.3d 197, 201 (Tex.2001) (*Van Waters II* ).

6. 975 S.W.2d 606, 611 (Tex.1998).

7. 975 S.W.2d 601, 603 (Tex.1998).

8. *Van Waters II*, 62 S.W.3d at 201.

9. *Ethyl*, 975 S.W.2d at 614–15.

10. *Id.* at 612 (quoting *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1008 (2d Cir.1995)).

11. *Id.* at 610.

plaintiffs have a similar type of disease; (5) whether plaintiffs are alive or deceased; (6) the status of discovery; (7) whether all plaintiffs are represented by the same counsel; (8) the type of cancer alleged, if any; and (9) the type of products to which the plaintiffs were exposed.[12] In *Ethyl* we explained the considerations in applying these factors:

> As the number of Maryland factors that different cases have in common increases, the number of those claims that can be tried together may increase. But there is no mathematical formula, and some of the Maryland factors should be given more weight than others. The maximum number of claims that can be aggregated is not an absolute, and the particular circumstances determine the outer limits beyond which trial courts cannot go.[13]

A trial court must also "weigh the risk of prejudice or confusion against economy of scale."[14]

 Consolidation is not improper merely because some factors indicate that dissimilarities exist within the consolidated claims. Rather, it is vital that a party seeking relief from a consolidation order establish how the differences among the consolidated claims will materially affect the fairness of a trial.[15]

 A further consideration is the maturity of the alleged tort.[16] In *In re Bristol–Myers Squibb*, we instructed lower courts to "proceed with extreme caution" when consolidating claims of immature torts.[17] A tort is mature only when " 'there has been full and complete discovery, multiple jury verdicts, and a persistent vitality in the plaintiffs' [contentions].' "[18] Because no "toxic soup" case has ever been tried or appealed in Texas, the tort is immature. Hence, the trial court has less discretion to consolidate dissimilar claims and must proceed with extreme caution. With this in mind, we turn to the application of the Maryland factors to this case.

### 1. Common Work Site

 Plaintiffs argue that each of the plaintiffs worked at the same facility and, therefore, shared a common work site. The defendants counter that the plant was large and had several separate work areas—even separate buildings—that constitute separate work sites. Determining what constitutes a common work site does not turn merely on location, but on the similarity of exposures that occurred at a particular location in order to simplify proof of product identification.[19] Treating the Parker–Hannifin facility as a single work site would greatly complicate product identification in this case because the evidence shows that different mixtures of chemicals were used in different areas of the plant. Use of multiple air conditioning and ventilation systems and downdraft tables reduced the likelihood of exposure to the same chemicals in different areas of the plant. The twenty consolidated plain-

---

12. *Id.* at 611.

13. *Id.*

14. *Id.*

15. *Bristol–Myers*, 975 S.W.2d at 603–04.

16. *Ethyl*, 975 S.W.2d at 610.

17. *Bristol–Myers*, 975 S.W.2d at 603.

18. *Id.* (quoting McGovern, *An Analysis of Mass Torts for Judges*, 73 TEX. L. REV. 1821, 1843 (1995)).

19. *N. Am. Refractory Co. v. Easter*, 988 S.W.2d 904, 917–18 (Tex.App.—Corpus Christi 1999, pet. denied); *Owens–Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712, 717 (Tex.App.—Dallas 1997, no pet.).

tiffs selected for trial worked in different areas and have presented no evidence that they were exposed to the same injury-producing chemical mixtures. Because the areas of the plant in which the plaintiffs worked were so diverse, the Parker–Hannifin facility contains multiple work sites.

More importantly, the consolidation for trial of the claims of workers from different self-contained sites in the plant will likely unduly prejudice the defendants. Juror confusion is likely because the twenty different plaintiffs will necessarily offer proof of exposure to different chemicals that occurred in different parts of the plant, leading to a spider web of causation evidence linking the numerous defendants to different areas of the plant. This factor therefore weighs against consolidation.

### 2. Similar Occupations

There is no dispute that the twenty plaintiffs had dissimilar occupations. In *Ethyl*, we concluded that the fact that the plaintiffs held different jobs was not enough to warrant relief because the record did not show that the different jobs "resulted in differing exposure levels."[20] But the issue in *Ethyl* was whether different occupations, such as pipe fitters and insulators, suffered different levels of exposure to a single toxin—asbestos. In the instant case, the issue is not different exposure levels to a single chemical, but rather, exposure to different chemicals altogether. Numerous possible toxins are alleged to have caused the plaintiffs' injuries. Further complicating the matter is that the plaintiffs do not allege that these chemicals individually caused the assorted harms, but instead were mixed into a toxic soup, with various harmful combinations of toxins from many different defendants.

Consolidating claims under these facts will undoubtedly lead to juror confusion, unfairly prejudicing the defendants. Not only would jurors be forced to keep track of various exposure levels, but the jury would also need to follow the varying exposures to the fifty-five original defendants' chemicals and the many more chemical combinations used at different work sites. Because of these facts, this factor weighs against consolidation of the twenty plaintiffs' claims.

### 3. Time of Exposure

The time of exposure factor has two aspects, the dates on which the exposure occurred and the length of exposure.[21]

#### a. Dates of Exposure

The twenty plaintiffs began working at the plant during a range of thirteen years, from 1975 to 1988. *Ethyl* involved exposure dates varying by several decades, yet we concluded there was little evidence of prejudice or confusion of the jury.[22] But here, evidence in the record indicates that, during different periods of time, different chemicals were used at the plant. Because the chemicals used at the plant changed periodically, and many of the plaintiffs worked at the plant on different dates, this factor weighs against consolidation.

#### b. Length of Exposure

This factor also weighs against consolidation because the duration of the alleged exposure differs significantly among some of the trial plaintiffs. The plaintiffs started working during a thirteen-year span, and all the plaintiffs stopped working at the plant in 1992. Thus, a worker who began employment in 1975 could likely have more than four times the duration of exposure than a worker who started in 1988, though this discrepancy is less of a

---

**20.** 975 S.W.2d at 615.

**21.** *Id.*

**22.** *Id.* at 616.

concern than exposure to entirely different chemical combinations.

#### 4. *Similar Injury*

The proposed twenty plaintiffs allege more than fifty-five physical ailments, and no two plaintiffs have identical symptoms. Some plaintiffs complain of headaches, while others allege ailments ranging from nausea to insomnia. At least one plaintiff complains of a lump in her breast. In *Ethyl* and *Bristol–Myers*, we held that numerous and different injuries alone do not justify mandamus relief.[23] In both cases, we were concerned not with the mere fact that different injuries existed, but with whether those injuries had different etiologies. The plaintiffs in *Ethyl* asserted injuries including asbestosis, mesothelioma, and lung cancer, all of which were allegedly caused by exposure to asbestos. Similarly, in *Bristol–Myers,* the different injuries were all allegedly caused by breast implants. In the present case, however, there is evidence indicating that the various injuries were caused by exposure to numerous chemicals and chemical combinations. The evidence reflects exposure to different chemicals by virtue of working in different work sites, and this dissimilarity is compounded by evidence of vastly different injuries. There is no allegation or evidence that the different injuries stem from the same sources. Therefore, this factor weighs against consolidation.

#### 5. *Living or Deceased*

Because each of the twenty plaintiffs is living, this factor weighs in favor of consolidation.

#### 6. *The Remaining Factors*

The remaining Maryland factors, which include the status of discovery and whether the plaintiffs are represented by the same counsel, also favor consolidation of these twenty plaintiffs. However, we have held that these factors are far less important than the other considerations identified by the Maryland criteria.[24]

Although some factors favor consolidation of this group of plaintiffs, the most critical factors weigh against consolidation. Most importantly, because the plaintiffs worked at what were effectively different work sites, and thus were exposed to entirely different chemical mixtures, the other dissimilarities involving disease and occupations are magnified. Establishing a defendant's liability based on one plaintiff's exposure to a certain chemical combination will not aid in establishing a different defendant's liability for another plaintiff's exposure to an entirely different mixture of chemicals. Rather, it would only serve to prejudice and confuse a jury. Although some plaintiffs could appropriately share causation evidence by claiming exposure to the same chemical combinations and could therefore be consolidated for trial, not all twenty plaintiffs here could make such a claim. Because analysis of the evidence using the factors adopted in *Ethyl* and *Bristol–Myers* demonstrates that significant juror confusion and undue prejudice would result from a trial of this particular group of twenty plaintiffs, we hold that the trial court abused its discretion in consolidating this group for trial.

 Having concluded the trial court abused its discretion, we now must determine whether the defendants nevertheless have an adequate remedy by appeal. Absent extraordinary circum-

---

**23.** *Id.* at 617; *Bristol–Myers,* 975 S.W.2d at 604.

**24.** *Ethyl,* 975 S.W.2d at 616 (citing *In re Repetitive Stress Injury Litig.,* 11 F.3d 368, 374 (2d Cir.1993)).

stances, mandamus will not issue unless defendants lack an adequate appellate remedy.[25] An appeal is inadequate when parties are in danger of permanently losing substantial rights.[26] Such a danger arises when the appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made part of the appellate record.[27]

██ Because most consolidation orders do not threaten a defendant's substantial rights, mandamus typically does not lie from a trial court's consolidation order.[28] But if "extraordinary circumstances" are present that make an ordinary appeal inadequate, mandamus relief may be warranted.[29]

██ Such extraordinary circumstances are present in this case because an appellate court could not remedy the likely juror confusion in a consolidated trial of these twenty plaintiffs' claims. Given the totally unrelated claims of plaintiffs exposed to entirely different chemicals produced by different defendants, consolidation risks the jury finding against a defendant based on sheer numbers, on evidence regarding a different plaintiff, or out of reluctance to find against a de-

fendant with regard to one plaintiff and not another. The defensive theories as to many of these plaintiffs may also differ given the varying sources of exposure. The confusion created by multiple defensive theories is augmented in this case because there are fifty-five original defendants and at least nine remaining defendants. Similarly, confusion and prejudice could subsume the valid claim of a plaintiff based on an unrelated flaw or defense applicable to a different plaintiff's claim. Juror confusion and prejudice, under these facts, is almost certain, and it would be impossible for an appellate court to untangle the confusion or prejudice on appeal.[30]

We conclude that the consolidation of these twenty plaintiffs' claims against the defendants was an abuse of discretion for which there is no adequate remedy by appeal. Whatever advantage may be gained in judicial economy or avoidance of repetitive costs is overwhelmed by the greater danger an unfair trial would pose to the integrity of the judicial process. Therefore, without hearing oral argument,[31] we order the trial court to vacate its January 2, 2003 order consolidating the claims of the twenty plaintiffs. The writ

---

**25.** *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992).

**26.** *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 306 (Tex.1994).

**27.** *Walker,* 827 S.W.2d at 843–44.

**28.** We held in *Iley v. Hughes* that it was error that would require reversal on appeal for a trial court to order separate trials of liability and damages in a personal injury case, but we declined to issue a writ of mandamus. 158 Tex. 362, 311 S.W.2d 648, 651–52 (1958).

**29.** *Canadian Helicopters Ltd.,* 876 S.W.2d at 309; *Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 776 (Tex.1995); *CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex.1996).

**30.** *See also Dal–Briar Corp. v. Baskette,* 833 S.W.2d 612, 617 (Tex.App.—El Paso 1992, orig. proceeding) (explaining that if a consolidated trial were held, there would be "no way to untangle how or whether prejudice and confusion infected the jury's deliberations.... The chance of obtaining meaningful appellate review on the propriety of consolidation is, therefore, negligible."); *cf. Hayes v. Floyd,* 881 S.W.2d 617, 619 (Tex.App.—Beaumont 1994, orig. proceeding) (explaining that adequate remedy by appeal existed for allegedly improper consolidation order).

**31.** Tex.R.App. P. 52.8(c).

will issue only if the trial court fails to comply.