

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-09-405-CV

IN RE FRANKLIN SALAZAR; JO ANN
PATTON; WALTER VIRDEN, III; ROD
BARBER; CHAD BATES; JACK LEO IKER;
CORPORATION FOR THE EPISCOPAL
DIOCESE OF FORT WORTH; AND THE
EPISCOPAL DIOCESE OF FORT WORTH

------------

## ORIGINAL PROCEEDING

------------

## OPINION

------------

## I. Introduction

Relators Franklin Salazar, Jo Ann Patton, Walter Virden, III, Rod Barber,

Chad Bates, Jack Leo Iker, Corporation for the Episcopal Diocese of Fort Worth

(the Corporation), and The Episcopal Diocese of Fort Worth (the Fort Worth

Diocese), Defendants in the underlying cause, have filed a petition for writ of

mandamus complaining of the September 16, 2009 order entered by

Respondent, Judge John P. Chupp of the 141st District Court, which granted in part and denied in part Relators' motion to show authority under rule 12 of the rules of civil procedure. *See* Tex. R. Civ. P. 12. Relators ask this court to order the trial court to grant complete relief on their motion to show authority, bar attorneys Jonathan Nelson and Kathleen Wells from representing the Corporation and the Fort Worth Diocese in the underlying suit, and "dismiss the underlying case insofar as it is purportedly brought on behalf of the Corporation or the [Fort Worth] Diocese." We conditionally grant Relators' petition for writ of mandamus and vacate our November 16, 2009 order staying further proceedings in the trial court.

## II. Background

The underlying suit involves a dispute over control of the property belonging to the Fort Worth Diocese that is held by the Corporation. The suit was brought by The Episcopal Church (TEC), also naming as plaintiffs the Fort Worth Diocese and the Corporation, against Relators as Defendants. TEC describes itself as "a member of the Anglican Communion, a worldwide fellowship of autonomous regional churches known as 'Provinces,' each [of which] forms its own constituent units [] within its own geographical territory."

The Fort Worth Diocese, a Texas unincorporated association, was formed in 1983 and thereafter entered into membership with TEC. The Corporation is a Texas non-profit corporation that holds, manages, and administers all property

and funds acquired by gift, will, or otherwise for the use and benefit of the Fort Worth Diocese. It is undisputed that Relator Iker was not appointed by TEC but was duly elected by delegates at a regular meeting of the Fort Worth Diocesan Convention as Bishop of the Fort Worth Diocese, pursuant to the Constitution of the Fort Worth Diocese, and ordained in 1993. Upon his installation, Bishop Iker automatically became Chairman of the Board of Trustees of the Corporation. The other individual Relators were likewise not appointed but were duly elected and received their offices as Trustees of the Corporation at a Fort Worth Diocesan Convention.

In 2006, based on actions allowed by TEC that many believed violated the traditional and foundational purposes of the Church, Relators filed Amended and Restated Articles of Incorporation, allegedly in accordance with Texas law, removing any reference to TEC in the Corporation's affairs. At the two immediately following Annual Conventions of the Fort Worth Diocese in 2007 and 2008, a majority of the delegates to those Diocesan Conventions voted to amend the Fort Worth Diocese's Constitution and to withdraw the Fort Worth Diocese from membership in TEC. Then, on November 15, 2008, the Convention of the Fort Worth Diocese voted to enter into membership, and entered into membership, with the Anglican Province of the Southern Cone, a different province of the Anglican Communion.

On November 20, 2008, a disciplinary review committee of TEC announced that Bishop Iker had "abandoned the communion" of the Church. The Presiding Bishop of TEC declared that Bishop Iker was removed from the Ordained Ministry of TEC and thereby "ceased to be a bishop" of TEC or the Fort Worth Diocese. In February 2009, the Presiding Bishop of TEC convened a "special meeting" of the Fort Worth Diocesan Convention, consisting of the minority that had not prevailed at the two previous annual conventions, and elected Edwin Gulick as "Provisional Bishop" of the Fort Worth Diocese and Chairman of the Board of Trustees for the Corporation. The Convention further voted to reverse the constitutional amendments adopted at the two previous Conventions and declared all relevant diocesan offices of the Fort Worth Diocese "vacant." Bishop Gulick then appointed replacements for all offices, including the Trustees of the Corporation.

Bishop Gulick and the newly appointed Trustees (the Gulick Group) retained Jonathan Nelson and Kathleen Wells as attorneys purportedly to represent the Fort Worth Diocese and Corporation. Those attorneys, joined by attorneys for TEC, then filed the underlying suit in the names of the Fort Worth Diocese and the Corporation, but admittedly only on behalf of the Gulick Group, against Bishop Iker and the elected Trustees who were purportedly removed and replaced (the Iker Group), alleging that Bishop Iker is no longer a bishop of the Church and that the five named Defendant Trustees of the Corporation have left

the Church. By the suit, TEC and the other two named plaintiffs seek control of the church property, including the name and seal of the Fort Worth Diocese, and a declaratory judgment as to the true identity of the current Bishop and Trustees of the Corporation. In addition to Bishop Iker and those five named Defendant Trustees, individually, the suit also names as a Defendant "The Anglican Province of the Southern Cone's 'Diocese of Fort Worth' holding itself out as 'The Episcopal Diocese of Fort Worth.'"

Relators answered and filed a third-party petition against the individual members of the standing committee appointed by Bishop Gulick and a plea in intervention by the Corporation. In response to a motion for summary judgment filed by the plaintiffs, Relators filed a motion for continuance and their rule 12 motion to require Mr. Nelson and Ms. Wells to show their authority to prosecute the suit on behalf of the Fort Worth Diocese and the Corporation.[1] It is the trial court's order on the rule 12 motion from which Relators seek relief.

### III. Standard of Review

Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding). A trial court abuses its discretion if it incorrectly interprets or improperly applies the law. *In re*

---

[1]Relators do not contest the authority of the attorneys for TEC to prosecute the underlying suit on its behalf.

*Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642–43 (Tex. 2009) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Absent extraordinary circumstances, mandamus will not issue unless the relator lacks an adequate remedy by appeal. *In re Van Waters & Rogers, Inc.*,145 S.W.3d 203, 210–11 (Tex. 2004) (citing *Walker*, 827 S.W.2d at 839). Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). As this balance depends heavily on the circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *Id.* An appellate court should consider whether mandamus will allow the court to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments and whether mandamus will spare litigants and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding).

## IV. The Rule 12 Order

After two hearings at which the trial court received affidavits, testimony, documents, and arguments of the parties, the trial court entered an order titled "Order Granting Rule 12 Motion" in which the trial court found that Mr. Nelson and Ms. Wells "have not discharged their burden of proof that they were hired by

individuals holding positions at the time of [their] hiring within The [Fort Worth Diocese] and [The Corporation] that are associated with Bishop Iker" and barred those attorneys from appearing in the trial court as attorneys "for the [Fort Worth Diocese] and [The Corporation] that is associated with Bishop Iker." However, the order of the trial court did not bar Mr. Nelson and Ms. Wells from appearing in the case on behalf of the Fort Worth Diocese and Corporation generally, nor did it strike the pleadings on behalf of those entities after an authorized person failed to appear.

Thus, Relators interpret the trial court's ruling as a partial denial of their requested relief and ask us to order the trial court to "grant their motion to show authority and to dismiss the underlying case insofar as it is purportedly brought on behalf of the Corporation or the [Fort Worth] Diocese."

> In relevant part, rule 12 states:
>
> A party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act. . . . At the hearing on the motion, the burden of proof shall be upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party. Upon his failure to show such authority, the court *shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears*.

Tex. R. Civ. P. 12 (emphasis added).

The emphasized language states that once the trial court finds the challenged attorney has not met her burden of proof, the trial court "shall" take two additional steps: (1) bar the challenged attorney from appearing in the case and (2) strike the pleadings if an authorized person does not appear. *Id.* The term "shall" as used in a statute is generally recognized as "mandatory," creating a duty or obligation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (citing Tex. Gov't Code Ann. § 311.016(2) (Vernon 2005)). Because we apply the same rules of construction to the rules of civil procedure as we apply to statutes, we conclude that the requirements of rule 12 that follow from a finding that the attorneys failed to discharge their burden of proof to show their authority are mandatory. *See BASF Fina Petrochemicals L.P. v. H.B. Zachry Co.*, 168 S.W.3d 867, 871 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (recognizing principles of statutory construction apply to rules of civil procedure); *In re R.C.M.*, No. 02-09-00080, 2010 WL 1267759, at *5 (Tex. App.—Fort Worth Apr. 1, 2010, no pet.) (mem. op.) (same); *see also Helena Chem. Co.,* 47 S.W.3d at 493 (holding term "shall" is generally construed as mandatory); *Thordson v. City of Houston*, 815 S.W.2d 550, 551 (Tex. 1991) (holding requirement of rule that judge "shall" set hearing is mandatory).

Although the trial court found that Mr. Nelson and Ms. Wells did not meet their rule 12 burden of proof, the trial court's finding was only that they failed to discharge that burden to show that they "were hired by individuals holding

positions . . . within the [Fort Worth Diocese] and [The Corporation] that are associated with Bishop Iker."   Additionally, the trial court barred Mr. Nelson and Ms. Wells only from appearing in the case as attorneys "for the [Fort Worth Diocese] and [The Corporation] that is associated with Bishop Iker" and did not strike the pleadings filed by Mr. Nelson and Ms. Wells on behalf of the Fort Worth Diocese and the Corporation.

## V.   Contentions of the Parties

Relators contend that the trial court abused its discretion by not striking the pleadings filed by Mr. Nelson and Ms. Wells in the names of the Fort Worth Diocese and the Corporation because it is undisputed that these attorneys were not hired by the duly elected Iker Group but by the Gulick Group, which merely claims to be the new Provisional Bishop and five newly appointed Trustees that have purported to sue in the names of the Fort Worth Diocese and the Corporation.   Relators argue that rule 12 is a proper vehicle to decide not only whether an attorney has authority to represent a party in a particular suit but also whether those hiring the attorney have authority to do so on behalf of the party they purport to represent.   Accordingly, Relators urge that the issue of the authority of the Gulick Group to hire Mr. Nelson and Ms. Wells on behalf of the Fort Worth Diocese and the Corporation should be decided based upon neutral principles of law.   *See Jones v. Wolf*, 443 U.S. 595, 603–05, 99 S. Ct. 3020, 3025–26 (1979) (holding civil courts may adopt neutral principles of law as means

of adjudicating intra-church property ownership disputes so long as resolution entails no inquiry into religious doctrine).

Relying on the Constitution of the Fort Worth Diocese and the requirements of the Texas Non-Profit Act as well as the Constitution and by-laws of the Corporation, which holds title to the funds and endowments in question, Relators argue that no persons other than the Individual Relators had authority to hire attorneys for the Corporation or the Fort Worth Diocese, and because the attorneys failed to establish any other person's authority to do so, the trial court abused its discretion in denying the motion with respect to the Corporation and the Fort Worth Diocese.

Real Parties in Interest respond that the trial court actually denied Relators' motion, as shown by the trial court's comment during the hearing that the identity issue would be better decided by a ruling on the merits than under rule 12. Real Parties in Interest argue that the issue of the identity of the true Bishop and Trustees lies at the heart of the suit, that a rule 12 motion is not an appropriate vehicle for deciding that issue in the underlying case, and that the trial court acted within its discretion by postponing that decision until the merits are decided in the normal course of the litigation.

Real Parties in Interest further contend that, even if the trial court had reached the identity issue, it would have been required to defer to TEC as the sole arbiter of that issue, and that TEC has already determined that Relators —

Bishop Iker and the elected Trustees named as Defendants below — are no longer serving as Bishop and Trustees of the Fort Worth Diocese and Corporation but have abandoned the Fort Worth Diocese and vacated their offices.  Real Parties in Interest contend that, under the First Amendment, the identity of the Bishop and the Trustees are "ecclesiastical" questions and that this Court must defer to the decision of TEC that the Gulick Group had the authority to hire Mr. Nelson and Ms. Wells on behalf of the entities in question.  *See Serbian E. Orthodox Diocese for U.S. of Am. and Canada v. Milivojevich*, 426 U.S. 696, 710, 717, 96 S. Ct. 2372, 2381, 2384 (1976) (holding, under First Amendment, decision of highest ecclesiastical tribunal of hierarchical church must be accepted on matters of discipline, faith, ecclesiastical rule, custom, or law and that defrocking of bishop was at "core" of ecclesiastical concern).  Thus, Real Parties in Interest argue that we should deny Relators' petition for writ of mandamus.

## VI.   Analysis

### A.  The Trial Court's Abuse of Discretion

We do not reach the question of the true identity of the Bishop and Trustees because we agree that the trial court deferred a resolution of that issue pending a substantive motion or further proceedings on the merits, nor do we express any opinion concerning the propriety of resolving this intra-church dispute through litigation in a Texas state court.  We do, however, apply the plain

language of rule 12 in the context of the proceeding as it has been presented to us by the parties.

In that regard, neither side has challenged the trial court's finding that Mr. Nelson and Ms. Wells did not discharge their burden of proof that they were hired by individuals holding positions at the time of their hiring within the Fort Worth Diocese and the Corporation that were associated with Bishop Iker. Absent such proof, while Mr. Nelson and Ms. Wells may be authorized to represent the individuals who hired them, these attorneys have not established their authority to represent or appear on behalf of the Fort Worth Diocese and the Corporation as required by rule 12.

It is undisputed that there is only one Corporation and only one Fort Worth Diocese, regardless of how those entities are named or characterized in the underlying suit — whether as entities, as individuals "holding themselves out" as those entities, or as individuals "associated with" one or the other Bishop. There is a single Fort Worth Diocese and Corporation, which both a majority and a minority faction claim to control.[2] The attorneys whose authority is challenged are either authorized to represent those two entities or they are not. But the trial

---

[2]*Cf. De Zavala v. Daughters of the Repub. of Tex.*, 58 Tex. Civ. App. 19, 23–24, 124 S.W. 160, 162 (Tex. Civ. App.—Galveston 1909, writ ref'd) (determining which of two factions constituted properly elected officers that represented organization but noting that, in effect, actions of rival factions constituted two separate corporations).

court has barred them from representing only the Corporation and the Fort Worth Diocese associated with the Iker Group. We are aware of no statute or common law rule allowing attorneys to prosecute a suit in the name of a corporation or other entity on behalf of only one faction or part of that corporation or entity against another part or faction.[3]

Additionally, we are guided by the rule emphatically stated in Rule 1.12 of the Texas Disciplinary Rules of Professional Conduct that "[a] lawyer retained or employed by an organization represents the entity," not its directors, officers, employees, members, or other constituents. Tex. Gov't Code Ann. Title 2, Subt. G, App. A, Art. 10, § 9, Rule 1.12 (Vernon Supp. 2009). This rule reflects established law that "[i]n a corporation's affairs, there is but one client — the corporation." *In re Marketing Investors Corp.,* 80 S.W.3d 44, 49 (Tex. App.—Dallas 1998) (orig. proceeding) (quoting *Commodity Fixtures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348, 105 S. Ct. 1986, 1991 (1985)). A lawyer representing a corporation and the corporation have a fiduciary relationship. *See Bryan v. Bartlett*, 435 F.2d 28, 37 (8th Cir. 1970), *cert. denied*, 402 U.S. 915 (1971). Thus, a lawyer may not be hired to represent a corporation

---

[3] We express no opinion as to whether a derivative action may be maintained by members of a non-profit entity on its behalf. *See Flores v. Star-Cab Co-Op. Ass'n, Inc.*, No. 07-06-00306, 2008 WL 3980762, at *7 (Tex. App.—Amarillo, Aug. 28, 2008, pet. denied) (mem. op.) (noting lack of statutory authority for and not deciding issue).

by one of two factions in the organization against the other faction. *See* Tex. Gov't Code Ann. Title 2, Subt. G, App. A, Art. 10, § 9, Rule 1.12, cmt. 4. Because the interests of the individuals within the Fort Worth Diocese and the Corporation associated with Bishop Iker are adverse to those associated with Bishop Gulick, by whom Mr. Nelson and Ms. Wells were hired, those attorneys may represent the latter individuals but not the entities when they did not discharge their burden of proving authority to do so.

The trial court did not determine on the merits which Bishop and which Trustees are the authorized persons within the Corporation and the Fort Worth Diocese, nor do we. The question of "identity" remains to be determined in the course of the litigation. For the purposes of the rule 12 motion, however, the effect of the trial court's order is that Mr. Nelson and Ms. Wells have not established authority to represent the Fort Worth Diocese and the Corporation. Given the mandates of rule 12, it was not within the discretion of the trial court not to strike the pleadings filed by Mr. Nelson and Ms. Wells on behalf of the Corporation and the Fort Worth Diocese and not to bar those attorneys from participating in the cause on behalf of the Corporation and the Fort Worth Diocese. *See Thordson,* 815 S.W.2d at 551 (holding, under language of rule 165a(4) requiring that judge "shall" set hearing on motion to reinstate as soon as practicable, it was not within trial court's discretion to fail to hold a hearing on motion to reinstate). Therefore, the trial court clearly abused its discretion.

## B. No Adequate Remedy by Appeal

Having held that the trial court clearly abused its discretion, we must still determine whether Relators have an adequate remedy by appeal. The supreme court has explained that "[m]andamus review of incidental, interlocutory rulings by the trial courts unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation." *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 136 (Tex. 2004). However, the court has further explained,

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*Id.* This is an exceptional case justifying mandamus relief because the failure to correct the trial court's abuse of discretion would "so skew[] the litigation process that any subsequent remedy by appeal [would be] inadequate." *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 595 (Tex. 1996) (orig. proceeding) (granting mandamus relief where trial court's abuse of discretion by requiring a party to advance litigation costs of the opposition in addition to its own expenses so "radically skew[ed] the procedural dynamics of the case" that any

subsequent remedy by appeal was inadequate); *see also TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 919 (Tex. 1991) (eventual remedy by appeal from trial court's interlocutory order imposing death penalty sanction is inadequate because "[t]he entire conduct of the litigation is skewed" by imposition of the sanction).

Because a corporation cannot sue itself, the trier of fact will be unnecessarily confused by presentations from two opposing factions who claim to be the Corporation and the Fort Worth Diocese. Unless the trial court's order is modified to strike the pleadings filed by Mr. Nelson and Ms. Wells on behalf of the Corporation and the Fort Worth Diocese and to bar those attorneys from appearing in the underlying cause as attorneys of record for the Corporation and the Fort Worth Diocese, confusion in the litigation will be perpetuated, including the appearance that the issue is already resolved in favor of one party before the questions of identity and title to the property held by the Corporation and the Fort Worth Diocese are determined in the course of the litigation. Moreover, as the parties are currently postured, any judgment against the Iker Group would be reversible because the Iker Group was not shown to have authorized bringing this suit on behalf of the Corporation or the Fort Worth Diocese. *See City of Grand Prairie v. Finch*, 294 S.W.2d 851, 853 (Tex. Civ. App.—Dallas 1956, no writ) (noting that a finding that a party produced no evidence of the authority with which the suit was prosecuted is ordinarily reversible error). An appeal after final

judgment would be inadequate because the time and money for trial as the parties are currently named and aligned would be wasted in enduring a proceeding that concludes without a binding judgment.[4]  Therefore, we hold that Relators do not have an adequate remedy by appeal.

## VII.  Conclusion

We conditionally grant the writ of mandamus and direct the trial court to modify its order of September 16, 2009 to follow the mandates of rule 12 and to strike the pleadings filed by Mr. Nelson and Ms. Wells on behalf of the Corporation and the Fort Worth Diocese and bar them from appearing in the underlying cause as attorneys of record for those named plaintiffs.  If the trial court fails to do so, the writ will issue.

ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED:  June 25, 2010

---

[4]We express no opinion on the merits of the underlying suit and simply note that this is one of the possible difficulties that might occur if the trial court's order is not modified.