# NO. 12-19-00417-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: HYUNDAI MOTOR COMPANY* | § | |
| *AND HYUNDAI MOTOR AMERICA,* | § | *ORIGINAL PROCEEDING* |
| *RELATORS* | § | |

## *MEMORANDUM OPINION*

Hyundai Motor Company and Hyundai Motor America (collectively Hyundai) filed a petition for writ of mandamus challenging the trial court's order defining the scope of discovery, which stemmed from a motion to compel filed by Real Party in Interest Randale Case, as representative of the Estate of Vonda Wynette Case, Deceased, for and on behalf of all those entitled to recover for her death under the Texas Wrongful Death and Survival Acts, and as next friend of XXXXXXX XXXX, minor and Lillie Jean Craig, individually (Case). The respondent is the Honorable J. Clay Gossett, Judge of the 4th District Court in Rusk County, Texas. We conditionally grant the petition.

## BACKGROUND

Case sued Hyundai after a 2014 Hyundai Elantra was involved in a single vehicle incident, which resulted in a rollover, and in which the vehicle's passenger, Vonda Case, perished. In conjunction with a notice of deposition for Hyundai's corporate representative, Case requested documents from Hyundai related to the following vehicle safety component systems: (1) center mounted airbags; (2) reverse geometry seatbelts; (3) rollover activated seatbelt pretensioners; and (4) rollover activated side curtain airbags. Hyundai moved to quash the deposition notice and objected to the requests as overly broad and unduly burdensome. Case filed a motion to compel, to which Hyundai responded. Hyundai also moved for a protective order.

The trial court conducted a hearing on the matter and considered competing expert affidavit testimonies offered by the parties. Ultimately, the trial court entered an order, in which it set forth the scope of discovery as follows:

> The Court finds and orders that the scope of discovery that shall govern the discovery at issue before the Court that pertains to the Hyundai Defendants shall be as follows:
>
> 1. All vehicles worldwide sold or manufactured as Hyundai vehicles or Kia vehicles for model years 2006–2016 and will include production, prototype, experimental[,] or concept vehicles within the time frame of 2006–2016. This will include subsidiaries responsible for designing or testing Hyundai and Kia branded vehicles, including Hyundai Mobis;
>
> 2. This Order relates to the following:
>
>    a. Center mounted airbags;
>    b. Reverse geometry seatbelts for the front or rear seat positions;
>    c. Rollover activated seatbelt pretensioners; and
>    d. Rollover activated side curtain airbags.
>
> 3. The Hyundai defendants are ordered to search for all testing (including testing that may not be related to a specific Hyundai or Kia platform), patents, and technical or research papers authored or co-authored by any Hyundai or Kia engineer (including subsidiaries noted above) for the following:
>
>    a. Center mounted airbags;
>    b. Reverse geometry seatbelts for the front or rear seat positions;
>    c. Rollover activated seatbelt pretensioners; and
>    d. Rollover activated side curtain airbags.

Thereafter, Hyundai filed this petition for writ of mandamus.

### AVAILABILITY OF MANDAMUS

Mandamus relief is available if the relator establishes a clear abuse of discretion for which there is no adequate remedy by appeal. *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding). "Generally, the scope of discovery is within the trial court's discretion, but the trial court must make an effort to impose reasonable discovery limits." *Id.* (quoting *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding)). A trial court abuses its discretion if it orders discovery exceeding the scope permitted by the rules. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding); *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996) (orig. proceeding); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding); *In re Michelin N. Am., Inc.*, No. 05-15-01480-CV, 2016 WL 890970, at *4 (Tex. App.–Dallas Mar. 9, 2016, orig. proceeding) (mem. op.).

Whether a clear abuse of discretion adequately can be remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). Because this balance depends heavily on the circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *Id.* An appeal is inadequate when the parties are in danger of permanently losing substantial rights. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex. 2004) (orig. proceeding). "Such a danger arises when the appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made part of the appellate record." *Id.* For this reason, mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery. *See In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding). "Intrusive discovery measures . . . require, at a minimum, that the benefits of the discovery measure outweigh the burden imposed upon the discovered party." *Id.*; *see In re CSX Corp.*, 124 S.W.3d at 153 (holding relator lacked adequate remedy by appeal where discovery order compelled production of "patently irrelevant" documents); *Tilton v. Marshall*, 925 S.W.2d 672, 683 (Tex. 1996) (orig. proceeding) (mandamus relief may be justified when burden on producing party is far out of proportion to any benefit to requesting party).

### SCOPE OF DISCOVERY

In its petition, Hyundai argues that the trial court's order is overly broad and unduly burdensome. Discovery is overly broad in products liability cases when the order covers products not relevant to the case and the order is not reasonable in its scope. *In re Deere*, 299 S.W.3d at 820; *see also* TEX. R. CIV. P. 192.3 (discovery should be limited to information "reasonably calculated to lead to the discovery of admissible evidence"). Discovery orders requiring production from an unreasonably long period are impermissibly overbroad. *See In re CSX*, 124 S.W.3d at 152 (citing *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (concluding that discovery order was overly broad by requiring production of "virtually all documents regarding its products for a fifty-year period")). A central consideration in examining overbreadth is "whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *In re CSX*, 124 S.W.3d at 153. An order that compels overbroad discovery is an abuse of discretion for which

3

mandamus is the appropriate remedy. *See **In re Nat'l Lloyds Ins. Co.***, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding); ***In re Sun Coast Res., Inc.***, 562 S.W.3d 138, 146 (Tex. App.–Houston [14th Dist.] 2018) (orig. proceeding). The party objecting to discovery "must present any evidence necessary to support the objection." TEX. R. CIV. P. 193.4(a).

The supreme court often has granted mandamus relief in product liability cases when a discovery order covers products the plaintiff never used. *See, e.g.*, ***In re Graco Children's Prods.***, 210 S.W.3d at 600–01 (in suit alleging that infant car seat's harness was defective, mandamus granted concerning discovery order regarding defects not similar to defect alleged in case); ***In re Am. Optical***, 988 S.W.2d at 712–13 (mandamus granted concerning discovery order regarding respiratory protection equipment plaintiffs never alleged they used); ***Gen. Motors Corp. v. Lawrence***, 651 S.W.2d 732, 734 (Tex. 1983) (orig. proceeding) (in suit claiming truck with in-cab fuel tank was defectively designed, mandamus granted concerning discovery order requiring information about all GM vehicles); *see also **Texaco***, 898 S.W.2d at 814–15 (in suit based on plaintiffs' alleged exposure to asbestos and other toxic substances, mandamus granted regarding discovery order requiring production of all documents written by corporate safety director that concern safety).

## Discussion

In the instant case, both Hyundai and Case presented extensive expert affidavit testimony to the trial court in support of their respective positions. Hyundai's expert, Youn ho Baek, testified, in pertinent part, as follows:

> • The vehicles with airbag systems and front outboard seatbelt systems substantially similar to the 2014 Hyundai Elantra MD/UD were introduced for the 2011 model year and continued in production until the 2016 model year. Therefore, . . . the appropriate scope of vehicles to consider in this matter is 2011–2016 Elantra Series MD/UD that were designed, developed, manufactured and tested to be distributed in the United States ("Subject Elantra Series"). No other Hyundai vehicles are substantially similar to the Subject Elantra Series for purposes of analyzing the airbag systems and front outboard seatbelt systems, and information about other vehicles would not be helpful in analyzing the allegations in this case because . . . one cannot make sound engineering conclusions about the performance and design of the airbag system and front outboard seatbelt system by analyzing the performance and design of dissimilar systems in dissimilar vehicles and environments.
>
> • Some Hyundai vehicles sold worldwide utilize the same general body structure, chassis and powertrain (or "base platform") as the Subject Elantra Series, and some may have similar external stylings, but these vehicles are not substantially similar to the Subject Elantra Series described above.
>
> • The Avante is the model name of a vehicle built on the same "base platform" as the Subject Elantra Series but specifically built for Korean markets. The Avante is not substantially similar

4

to the Subject Elantra Series for analyzing the restraint system components, including the seatbelt systems and airbag system.

• Vehicles built on the MD "base platform" for the Australian and Indian markets are known as Elantras but these vehicles are not substantially similar to the Subject Elantra Series for analyzing the restraint system components. They have different layouts of the engine room compartments for different drive systems (right hand v. left hand drive system). The change in geometry would affect how the vehicle's overall performance would affect certain component systems. Therefore, the safety restraint systems including the seatbelt systems and airbag system are different.

• Hyundai and Kia share vehicle "base platforms" (general body structure, chassis and powertrain) for development purposes. However, they do not share the same styling, characteristic or performance and sometimes do not share the type of vehicles. The 2011–2016 Hyundai Elantra (MD/UD) share the "base platform" with the Kia Forte for the model years 2014–2018 (YD). These vehicles are a similar type of small sedan and share many base systems and components given that they are developed on the same "base platform," but the styling and the restraint systems, including airbag systems and seatbelt systems, are different.

• In order to draw sound engineering conclusions about the performance or characteristics of the airbag system and front outboard seatbelt system for the Subject Elantra Series at issue in this case, there must be substantial similarity in the airbag systems and front outboard seatbelt systems of the other vehicles being considered with that of the Subject Elantra Series. The physical dimensions, materials, and properties of the airbag system and front outboard seatbelt system, and how the airbag system and front outboard seatbelt system are designed to function and deploy in certain circumstances, are a few of the important factors in evaluating the performance of the Subject Vehicle and reasonableness of its design. These factors vary from vehicle family to vehicle family.

• Even though this case involves only claims regarding a Subject Elantra Series vehicle, the Court's Order involves a wide range of information relating to vehicles and model years with design parameters which do not match those of the Subject Vehicle. The scope defined in the Court's Order goes far beyond cars of similar design to the Subject Vehicle and encompasses information regarding luxury cars, sedans, sports cars, compacts and SUVs. The performance of these other vehicles in dynamic situations, including situations similar to the event in question, are significantly different and not helpful in analyzing the Subject Vehicle's performance.

• HMC maintains an enormous volume of documents regarding its many hundreds of model years of vehicles and its thousands of components. It is unduly burdensome for HMC to conduct a worldwide search for vehicles that are not reasonably tailored to the model year vehicle involved in this matter. It is unduly burdensome for HMC to conduct a search that spans a multitude of vehicle platforms, models, and trim levels over a ten-year period. For HMC to fully comply with a worldwide scope of all Hyundai vehicles for a l0 year period anywhere in the world would not only result in undue hardship and burden on HMC but would yield a tremendous volume of irrelevant documents and result in enormous expenses for HMC, including for time and expenses spent sorting and copying many thousands of documents. Such expansive searches would require costs and resources that are far beyond the benefits of gathering such materials. The cost to HMC to search for, gather and copy materials in compliance with the Court's Order would be extremely expensive and excessive when considering the needs of this case.

In contrast, Case's expert, Nell Hannemann, testified, in pertinent part, as follows:

• [Hyundai's proposed narrow] scope of its discovery search to the 2011–2016 model year U.S. bound Hyundai Elantra . . . is improper from an engineering standpoint for a number of reasons . . . .

5

• While there are some vehicles that have different features and designs for different geographical regions, the vast majority of the components and systems are the same. A different geographical region does not guarantee a different or unique design.

• The design of a body structure, chassis, airbag, seat and seat belt components are, in most cases, an evolutionary process. It is an oversimplification that "The MD/US Elantra body structure is a unique engineering platform. Major body structural, chassis, airbag, seat and seat belt components are unique and not interchangeable with any other Hyundai platform." It is likely that some components are identical, and there are Hyundai platforms that are substantially similar, with the difference being the size of the vehicle. For example, the function of the body structure in most vehicles is substantially similar.

• All major automotive manufacturers recognize that the vehicles they produce have specific functional requirements. These functional requirements are cascaded down from an overall vehicle level, to system level, to component level. Each manufacturer varies in some degree in how they classify systems and components, but these are more clerical differences than functional differences. Within a given company, for example, Hyundai in this case, it is likely that the functional requirements for "sedans" are substantially similar if not identical in many aspects.

• While not having access to Hyundai's functional requirements or objectives, the actual documents cannot be compared. However, based on my 35 plus years of automotive engineering and manufacturing experience, it would be my expectation that the vehicle level functional requirements, or whatever the highest level of requirements or objectives that addresses the structure, chassis, airbag, seat and seat belt components of a vehicle, would be substantially similar if not identical.

• These requirements would apply to all vehicles that a manufacturer designs and manufactures [including passenger vehicles, minivans, and sport utility vehicles with multiple "design architecture" subcategories].

• Design details, such as a vehicle[']s shape, size or appearance is not a criterion that creates a substantial difference within the architecture types or configurations . . . .

• A difference between a 2-door or 4-door vehicle is not substantially different as to the design architecture if the design still includes A, B, and C pillars for both the 4 door and 2 door versions. There should be no difference in safety performance goals for a 2 door vs. a 4 door.

• It is not required that a component be "interchangeable" in order for it to be substantially similar. In fact, many components on vehicles that are the "same" part are not interchangeable. There are design iterations that could make the part not interchangeable, but it still performs the same function on the same vehicle.

• The only way to know how similar specific parts, and their performance may be is to analyze the drawings and the test results. If these documents are not produced for the purposes of this analysis, it is impossible for a plaintiff to do this analysis. The court is accepting the "engineering judgment" of Hyundai and being prevented from even having the benefit of the engineering judgment of the plaintiff[']s expert.

• Without being able to compare the performance requirements of various Hyundai vehicles it is difficult to determine how similar they are. It is important to my design analysis methodology to investigate alternative designs, so discovery on what other Hyundai designs are similar, or not, is required. Hyundai manufactures vehicles of many different sizes and weights. The performance should take the different weights of vehicles into account. The only way to determine if Hyundai has decided that performance should take this into account is to analyze the performance of other Hyundai vehicles.

6

• Alternative designs are part of the design and development methodology in the product creation process for an auto company. These alternative designs are either studies that were undertaken during the design process or other vehicles that have been designed by the manufacturer. Many vehicle designs are an iterative process developing with each subsequent model year and other platforms that the manufacturer designs. These designs of other models make up the collective experience and knowledge that an auto manufacturer can and should apply to any of their specific vehicles.

• Competitive analysis is another method that an auto manufacturer uses to improve their designs. All manufacturers study what other manufacturers are doing and use this information as alternatives in their vehicle, system and component designs.

• Counsel for Hyundai have offered to tender a witness that will address what Hyundai considered for all of its vehicles when developing and designing the subject vehicle. This offer is problematic. First, Hyundai has numerous subsidiaries and actually owns Kia so this offer would not cover these entities. Second, manufacturers routinely have access to outside entities, such as system or component suppliers, that conduct research, analysis and testing on specialized research projects so these outside entities work would not be covered. Third, Hyundai may have conducted testing 10 or 20 years ago that it had not considered for a specific generation or platform vehicle but solely for research purposes. Fourth, research, evaluations and studies of various safer alternative designs can be a process that builds upon itself and safety advances are made through continuous improvement. Safer alternative designs developed in the past may not have been considered for any generation or platform until such time as the cost factors have been met.

• I am at a distinct disadvantage in this case because Hyundai's engineers have unlimited access to their entire body of engineering data. When Hyundai limits my ability to access this same information, it jeopardizes my ability to discuss safer alternative designs that are technologically and economically feasible . . . . This is precisely why broad-brush discovery access is relevant, vital and imperative.

• Hyundai has access to vital information and historical knowledge that is vital and critical so that a true understanding of why they did not use these safer alternative designs can be explored.

• Just because a vehicle is not tested to US standards does not mean it will or will not pass them if tested. To imply that the vehicle is different because it does not have to meet a particular standard is an over-simplification and likely not true. It is likely that the vehicle will be identical, and that specific discrete changes will be necessary.

• Testing results from other markets is relevant to customer safety, not from the perspective of regulatory requirements. Differing regulatory requirements are quite different from the safety of a customer.

• Also, if a manufacturer is using a safer alternative design in a market other than the United States, then that demonstrates that the design is both technologically and economically feasible. Further, the design was likely tested before it was used in a production vehicle. This testing and engineering analysis would be beneficial in trying to determine why the system was not used in the United States.

It is evident from their respective experts' testimonies that the parties have taken vastly divergent positions about what information likely will lead to the discovery of admissible evidence. On the one hand, Case's expert testified that, as it relates to the subject

component systems, vehicles substantially similar to the subject 2014 Hyundai Elantra include all Hyundai and Kia passenger vehicles worldwide, including models from earlier generations.[1] On the other hand, Baek testified that substantially similar vehicles are limited only to the 2011–2016 generation of Hyundai Elantras manufactured for the United States market. The trial court appears to have adopted Hannemann's testimony on a largely wholesale basis. And while we disagree with the trial court's finding, in so doing, we do not conclude that Baek's testimony, in which he sought to foreclose the notion that "substantially similar vehicles" could include, for example, Elantras of the same generation sold in other countries, Kia vehicles based on the same platform, and research and patents[2] unrelated to specific vehicle platforms, properly frames the scope of discovery. Instead, the appropriate scope of discovery lies between these divergent positions.

Because parties are not entitled to unlimited discovery, the trial court must impose reasonable discovery limits. *See In re Graco*, 210 S.W.3d at 600; *In re Sun Coast Res., Inc.*, 562 S.W.3d at 146. Based on our review of the record, we conclude that by finding that the scope of discovery should include information related to all Hyundai and Kia passenger vehicles worldwide for a ten-year period, the trial court failed to exercise its discretion in a manner that imposed reasonable discovery limits. Therefore, we hold that the trial court abused its discretion by issuing a discovery order that is overly broad and unduly burdensome. *See In re Deere*, 299 S.W.3d at 820; *see also* TEX. R. CIV. P. 192.3. Further, because it is apparent from the record that as a result of the trial court's order, Hyundai is in danger of permanently losing substantial rights, which this court otherwise would not be able to cure, we also hold that Hyundai lacks an adequate remedy by appeal. *See In re Van Waters & Rogers*, 145 S.W.3d at 211; *see also In re Weekley Homes*, 295 S.W.3d at 322.

---

[1] Requests for information must be "reasonably tailored to include only matters relevant to the case" and may not be used as a "fishing expedition." *In re Am. Optical Corp.*, 988 S.W.2d at 713. We note that Hannemann's testimony regarding his need for the "entire body of engineering data," to which Hyundai engineers have access, fairly can be categorized as a fishing expedition. *See id.*

[2] It is apparent from the record that Hyundai already has produced tens of thousands of documents, including certain patent information.

8

## CONCLUSION

Having concluded that the trial court abused its discretion in rendering an order defining the scope of discovery that is overly broad and unduly burdensome and that Hyundai does not have an adequate remedy on appeal, we ***conditionally grant*** mandamus relief. We trust that the trial court will promptly vacate its order of August 9, 2019, in which it set forth the scope of discovery. The writ will issue only if the trial court fails to comply with this court's opinion and order ***within ten days***. The trial court shall furnish this court, within the time for compliance with this court's opinion and order, a certified copy of its order evidencing such compliance.

**BRIAN HOYLE**
Justice

Opinion delivered March 25, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

MAARCH 25, 2020

NO. 12-19-00417-CV

**HYUNDAI MOTOR COMPANY
AND HYUNDAI MOTOR AMERICA,**
Relators
V.

**HON. J. CLAY GOSSETT,**
Respondent

ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by Hyundai Motor Company and Hyundai Motor America; who are the relators in appellate cause number 12-19-00417-CV and the defendants in trial court cause number 2017-172, pending on the docket of the 4th District Court of Rusk County, Texas. Said petition for writ of mandamus having been filed herein on December 20, 2019, and the same having been duly considered, because it is the opinion of this Court that the petition is meritorious, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of mandamus be, and the same is, hereby **conditionally granted**.

And because it is further the opinion of this Court that the trial judge will act promptly and issue an order vacating its order of August 9, 2019, in which it set forth the scope of discovery, the writ will not issue unless the Honorable J. Clay Gossett, Judge of the 4th Judicial District Court of Rusk County, Texas fails to do so **within ten (10) days** from the date of this order.

It is further ORDERED that all costs of this proceeding are hereby adjudged against **Real Party in Interest, RANDALE CASE, as representative of the Estate of Vonda Wynette Case, Deceased, for and on behalf of all those entitled to recover for her death under the Texas Wrongful Death and Survival Acts, and as next friend of XXXXXXX XXXX, minor and Lillie Jean Craig, individually.**

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*